MODERN STEEL STRUCTURAL COMPANY, Respondent, vs.
 ENGLISH CONSTRUCTION COMPANY and another, Appellants.

*May 8—June 21, 1906.*

(1) *Pleading: Liberal construction.* (2–8) *Building contracts: Failure to complete on time: Delay of subcontractor in furnishing materials: Damages recoverable by contractor: Waiver: Certificate of architect.*

1. Under the rule that pleadings should be liberally construed with a view to substantial justice between the parties, no pleading is to be condemned if the allegations of fact claimed to have been stated can be read therefrom with reasonable certainty, though its allegations be in form uncertain, incomplete, and defective.

2. Damages which a contractor was entitled to recover from a subcontractor for delay in furnishing materials are *held* not to have been waived by the making of a later agreement between the owner and contractor providing for enlarging the building (then not completed) at an increased price and for an extension of the time for its completion, and further providing that the contractor should make certain payments in lieu of the penalty incurred for failure to complete the building on time, but making no provision as to any damages which the contractor might have sustained by reason of the delay.

3. Where it was understood that, in regular course, structural iron would be needed to work into a building in the early part of a

building season, a subcontractor who had agreed to furnish such iron as it might be wanted and had been expressly directed in July to furnish some of it immediately, but failed to furnish it until the latter part of November, when the building season had practically closed, was liable to the principal contractor for the damages caused by such delay, even though he had been unable sooner to obtain the iron from the manufacturers.

4. Payment of a large sum by a contractor to a subcontractor under circumstances which warranted the contractor in believing that the money was accepted on the condition that his losses from delays on the part of the subcontractor would be adjusted later, did not amount to a waiver of the claim for damages on account of such delays.

5. The fact that payment by a contractor to employees and subcontractors of the amounts they actually lost by reason of delays caused by another subcontractor was made without notice to the latter does not preclude the contractor from recovering such amounts as damages from the subcontractor who caused the delay, it being still open to the latter, notwithstanding the payment, to contest such claims in every respect.

6. Where the inability of a contractor to complete a building at the agreed time was caused by a subcontractor's breach of his agreement to furnish material, and the contractor, in lieu of the penalty incurred, was required to pay the salary of the superintendent thenceforward until the completion of the building, the amount which he was so required to pay was a proper counterclaim against the claim of the subcontractor against him.

7. A provision in a building contract that the superintendent should determine "the amount of damages which may have accrued from any cause" and that his certificate and decision should be binding and conclusive in all matters, is *held* to apply only to the owner and principal contractor and not to have become a part of a subcontractor's agreement. *Stein v. McCarthy,* 120 Wis. 288, distinguished.

8. After his failure to complete a building at the agreed time, caused by a subcontractor's delay in furnishing materials, a contractor made a new agreement to construct, for an additional consideration, certain parts of the building not included in his original contract. *Held,* that he could not recover from the subcontractor for time spent in doing the new work, but only for time lost, by reason of the delay, in performing the work covered by the original contract.

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

On April 16, 1901, the *English Construction Company,* then composed of *John English* and James Mair, made a contract with Lincoln county to build a county courthouse. The construction company, by this contract, agreed to do the work and to furnish the material for the construction of this building, except the heating, plumbing, and electric wiring, in accordance with the requirements of the plans and specifications prepared by Van Ryn & De Gelleke, which had been adopted by the county. As a consideration for the erection and completion of this building the county agreed to pay the construction company $60,606; payments to be made as the work progressed, on the certificates of the architects or the superintendent, at eighty-five per cent. of the estimated value; final payment of all sums due to be made when the building was completed to the satisfaction of the architects and the committee representing the county. The building was to be inclosed and roofed before the expiration of the year 1901, and completed for occupancy by the county on or before September 1, 1902; provided no delays in the construction of it were occasioned by strikes, epidemics, or quarantines. The following was the stipulation as to the time of completion of the building:

"It is further agreed, should the contractor fail to finish the work at or before the time agreed upon, he shall pay to or allow the said county, by way of liquidated damages, the sum of twenty-five ($25.00) dollars per diem for each and every day thereafter the said work shall remain incomplete."

The plaintiff entered into a contract with the construction company, as a subcontractor for the ironwork, and agreed as follows:

"MERRILL, WIS., May 27, 1901.
*"English Construction Co., Merrill, Wis.*

"Gentlemen: We hereby propose to furnish iron work for Lincoln county courthouse as per plans and specifications, put in place, for seven thousand three hundred sixty dollars ($7,360.00). You to set the castings in place, also the iron

gratings.   Monthly estimates of 85 per cent. to be allowed us on this job.

"Yours truly,
"MODERN STEEL STRUCTURAL Co.
"By J. L. Bickels, Bus. Mgr.
"We hereby accept the above proposition.
"ENGLISH CONSTRUCTION Co.
"By *John English.*"

The specifications made provision for changes and altera-tions, and, as incidental to such variation from the original plans and specifications, for additions to and deductions from the cost; for the architects' control and decision; and for the appointment of a superintendent by the county building com-mittee.   Among the duties imposed upon the superintendent were:

"Giving on demand any certificate that the contractor may be entitled to, . . . *also determining the amount of dam-ages which may have accrued from any cause,* and particu-larly to decide upon the fitness of all material used and work done.   The superintendent's opinion, certificate, report, and decision on all matters to be binding and conclusive."

The specifications further provided that all contractors should comply with all things appearing therein, under what-ever heading it might appear, if it affected the contractor's work.   The construction company entered upon the execution of the contracts in the month of June, 1901, and soon there-after demanded that plaintiff immediately furnish a portion of the iron for use in the construction of the building.   This the plaintiff failed to do, and did not actually deliver such iron until about December 1, 1901—too late in the building season of that year to proceed with the construction of the building.

On September 1, 1902, the county and the defendant, the construction company, made an agreement:

"Amendatory of articles of agreement made under date of April 16, 1901, between the same parties.

"Witnesseth: That said party of the first part, for and in

consideration of the increase in the consideration hereinafter provided for, does hereby covenant, contract, and agree to complete all of the work not yet done as provided in the original contract, on the courthouse therein referred to, according to the plans, specifications, and drawings originally provided for the building of the said courthouse (which are declared to be a part of this agreement) made by Van Ryn & De Gelleke, architects, with the exception of the cement work in the basement, and the ornamental cresting on the deck of the roof, provided in such plans, specifications, and drawings. By 'original plans, specifications, and drawings' being meant those which were originally submitted by Van Ryn & De Gelleke, architects, but which were modified and cut down so as to come within the appropriation made by the county board, which original plans, specifications, and drawings are now on file and in the possession of the county clerk of Lincoln county, Wisconsin. With the exception of the change from the modified plans, specifications, and drawings, all of the terms of the original contract hereby amended are to be considered in full force and binding, with the exception of such as are hereafter specifically referred to. The time for the completion of the work under the said contract is hereby extended.to May 1, 1903. The consideration of said contract as hereby amended is changed from the sum of $60,606 to $80,323, to be paid in the same manner as provided in the original contract. It is further agreed and provided that from such consideration shall be deducted the salary of superintendent from September 1, 1902, to the time of the completion of the building, as hereby extended, at the rate of $45 per month."

The building was completed under these agreements; plaintiff furnished all the ironwork and did all the work required by its contract for the completion of the building as agreed, except a railing on the second-floor landing, which defendant supplied at a cost of $20.85. The plaintiff commenced this action to recover an alleged balance, amounting to $500.24, due it under its contract with the defendant.

The defendant *John English,* appearing in the action as the member of the defendant company who had acquired all the rights and assumed the obligations of the company grow-

ing out of the transaction covered by this action, alleged the
making of the various contracts for the construction of the
courthouse, entrance upon the erection and execution of the
work, inability to complete it within the time limited by the
original contract, its modification by the agreement of Sep-
tember 1, 1902, and the completion of the building under
these agreements in 1903.   He also alleged that the plaintiff's
omission to comply with its agreements to provide the iron for
the building as required in the course of the construction of
the building was the sole cause of the delay in completing it
as agreed in the original contract, and of his inability to com-
ply with it; that, as a result of such delay by the plaintiff, he
was compelled to make the agreement of September 1, 1902,
and that he had suffered damages through plaintiff's failure
to provide iron at the appropriate time in the course of the
construction of the building, consisting of the following items:
(1) For failure to furnish railing on second floor.   (2) To
amount paid Durner, subcontractor for the tile work, for loss
of time and expense incurred through plaintiff's delays in
furnishing iron.   (3) To the value of his own time from Sep-
tember 1, 1902, to the completion of the building in 1903.
(4) To amount paid masons and carpenters for loss of time
while waiting for iron.   (5) To the superintendent's salary,
paid in lieu of the penalty provided by the original contract;
and that said items amount in all to $3,893, which sum is now
demanded by way of counterclaim in the action. The plaintiff
denied liability as claimed in the counterclaim.

The action was tried by the court, and it found that plaint-
iff had completed its contract, except that it omitted to fur-
nish the railing on the second-floor landing; that there was due
plaintiff as a balance on said contract the sum of $500.24,
less $20.85 for failure to furnish the second-floor railing;
and awarded judgment against defendant for the difference,
namely, $479.35, with interest thereon from September 5,
1903, and amounting to $57.12; and for costs and disburse-

ments, taxed at $52.69.    This is an appeal from such judgment.

For the appellants there were briefs by *John Van Hecke,* attorney, and *Tullar & Lockney,* of counsel, and oral argument by *Mr. Van Hecke* and *Mr. D. S. Tullar.*

For the respondent there was a brief by *Ryan, Merton & Newbury,* and oral argument by *Mr. T. E. Ryan.*

SIEBECKER, J. . The contention is made that the trial court erred in holding that the reply to the counterclaim put in issue the amount claimed to be due defendant as damages for plaintiff's breach of contract as subcontractor. Under the rule that pleadings should be liberally construed with a view to substantial justice between the parties, no pleading is to be condemned if the allegations of fact claimed to have been stated can be read therefrom with reasonable certainty, "though its allegations be in form uncertain, incomplete, and defective." We think the court ruled properly in holding that the reply put in issue the allegations of the defendant's counterclaim for damages. *Manning v. School Dist. No. 6,* 124 Wis. 84, 102 N. W. 356.

The trial court determined that plaintiff was not liable in damages to defendant upon the alleged counterclaim for delay in furnishing the iron, upon the ground, apparently, either that plaintiff was not guilty of any delay in performing its contract to furnish the iron for this building, or, if guilty of delay under the original contract, that all damages covered by it were waived on September 1, 1902, under the modification of the agreement which provided for enlarging the structure and for an additional consideration of about $20,000. This contract, however, makes no provision for, nor do its conditions contain a waiver of, any damages which defendant may have sustained by reason of the delay in the construction of the building under the original contract; nor does it provide for payment of the damages incurred by way of payment for

time and labor to his subcontractors and laborers, or for the payment of the superintendent's salary from September 1, 1902, which was in lieu of the penalty incurred for failure to complete the building within the time fixed in the original contract. It is apparent that if defendant actually sustained losses on account of the delay in receiving the iron for the building, as he claims, he has not been paid such losses under the modified agreement of September 1, 1902.

Plaintiff insists that, if defendant's counterclaim is to be considered under the facts alleged, the evidence wholly fails to show that plaintiff was guilty of a breach of contract in furnishing and putting in place the ironwork for the building. · It was expressly specified that if a subcontractor failed in furnishing the material and labor "as it may be wanted to work into the building, he will be accountable for all delays and damages in consequence of any such neglect." Plaintiff, as subcontractor, accepted this condition and was bound to comply with its requirements. It appears clearly that plaintiff was expressly directed by letters of July 6, 1901, to proceed to procure the iron material required by the plans and specifications under their contract of the preceding May 27th, and on July 26th was notified to furnish the basement gratings immediately and to provide for floor beams. In the early part of the summer of 1901 the work of construction had been completed to a point where the iron was needed to enable defendant to continue the construction. Plaintiff failed to furnish such iron until the latter part of November, when the building season had practically closed. Under the facts and circumstances of the transaction we are unable to find any ground for saying that this delay by plaintiff could in any conceivable way be deemed permissible under the contract. It is obvious that the parties understood that, in the regular course of constructing the building, the iron would be needed to work into the building in the early part of the season of 1901. In view of these circumstances it must follow that

plaintiff became liable to defendant for any damages suffered on account of delay in furnishing the iron. It is insisted that plaintiff did all it reasonably could to supply the iron as it was needed, and that it was unavoidably delayed by the manufacturers in manufacturing and forwarding it. There is no stipulation in the contract making such inability to secure the material from manufacturers a condition excusing performance and relieving plaintiff from the consequences of nonperformance of its terms.

The further claim is made that the conclusion of the trial court should be sustained upon the ground that plaintiff waived any right to recover damages upon the counterclaim by paying respondent $1,500 in September, 1903, after the completion of the work, and by failing to give notice, before making payment, of any claim for damages by the respective claimants. The evidence shows that the payment of $1,500 was made to plaintiff's representative under circumstances which warranted defendant in believing that plaintiff accepted it through its representative on the condition that defendant's losses would be adjusted thereafter. This leaves no basis for claiming a waiver as against him upon this ground; nor is defendant precluded from now insisting upon the counterclaim by reason of paying to his employees and subcontractors the amounts they actually lost by reason of plaintiff's delay, without giving notice to plaintiff. It is argued that such notice should have been given to enable it to contest such claims before payment of them. The argument is, however, fully answered by the fact that payment of these amounts in no way establishes plaintiff's liability for them to defendant. It is incumbent on defendant to show that they are attributable to plaintiff's breach of contract and are therefore items of damages recoverable under his counterclaim. This preserves to plaintiff the right to contest them in every respect, regardless of any payment defendant may have made to third parties.

This brings us to the question of whether the evidence sustains the counterclaim. An examination of it shows that all of the evidence material to these claims is practically uncontradicted. It appears that the tiling contractor, Durner, suffered damage amounting to $88, attributable to plaintiff's failure to furnish the iron as needed in the course of the construction of the building. This defendant has paid and is entitled to recover. It also appears that defendant for the same reason sustained losses for time lost by masons and carpenters employed by him in the construction of the building, amounting to the sums of $324 and $260. The item of $315, paid as salary for the superintendent in the construction of the building after September 1, 1902, and deducted from the amount due defendant from the county after completion of the building, is a proper counterclaim, because the testimony establishes that defendant paid it for his failure to complete the building by September 1, 1902, in lieu of the penalty incurred by him under the original contract. As already stated there is practically no controversy but that under the facts and circumstances plaintiff's failure to comply with its contract for furnishing the iron was the cause of defendant's inability to complete the building by September 1, 1902.

The remaining item of defendant's counterclaim is $3,000, the value of his time spent in the performance of work after September 1, 1902. He insists that this item should be allowed him upon the certificate of the superintendent given as of July 1, 1905. It is averred that the specifications provide for the appointment of a superintendent, and that he should give all certificates to which the contractor should be entitled, and should determine "the amount of damages which may have accrued from any cause," and that his certificate and decision should be binding and conclusive in all matters. These provisions were manifestly intended to apply to and bind the county and defendant, as the principal contractor in the construction of the building. The terms of this stipulation do

not indicate, however, that it is to be deemed a part of a sub-contractor's undertaking, and plaintiff's agreement does not expressly provide that it shall be part of it. The situation is not within the decision of *Stein v. McCarthy,* 120 Wis. 288, 97 N. W. 912, where the terms and conditions of the specifications and original contract were included as part of the obligation assumed by the subcontractor. It is therefore to be determined whether, under the facts and circumstances of the transaction, plaintiff is entitled to recover on this item of the counterclaim. As stated, under the agreement of September 1, 1902, he undertook to construct the parts of the building not included in the original contract for an additional consideration of $19,717. As so modified, the defendant performed his contract within the year following the expiration of the time originally agreed upon for the completion of the building. Having undertaken to build the parts of the building added to the original structure, it follows that the time necessarily occupied in doing this is not to be charged as additional to the time required for completion of the work originally undertaken. If any claim for damages for defendant's time can be made, it must be for time lost in performing the work of the original contract, and defendant has not shown that he lost any time before the expiration of the original contract, nor has he attempted to show that he spent extra time thereafter in completing the work covered by the original contract. Under these conditions there is a want of proof to sustain this item of the counterclaim.

Upon these considerations the judgment must be reversed, and the cause remanded with directions to the trial court to award judgment to defendant, allowing him the items of damages in his counterclaim as above specified.

*By the Court.*—It is so ordered.