IOWA MFG. CO. v. B. F. STURTEVANT CO.

(Circuit Court of Appeals, Eighth Circuit. May 25, 1908.)

No. 2,705.

1. SALES—REMEDIES OF BUYER—DAMAGES—MEASURE—DELAY IN PERFORMANCE OF CONTRACT.

　　Special damages may be recovered for breach of a contract for a sale of machinery by a failure to deliver it within the time required by the contract where they are the natural and direct result of the breach, owing to special circumstances known to the parties when the contract was made, although such circumstances may not have been stated in the formal contract, and where the amount can be ascertained with reasonable certainty.

2. CONTRACTS—PROOF OF DAMAGES—DEFENSES.

　　Where defendant which had contracted with a state to equip a public building with heating and lighting plants failed to complete the work

within the time required by the contract, in consequence of which the state deducted from the price the amount of liquidated damages for the delay, provided by the contract, and defendant made settlement on that basis, and there was testimony that the delay was caused solely by the failure of plaintiff to deliver certain machinery required for the work within the time agreed upon and that it had knowledge of the terms of defendant's contract, it was no defense to a claim by defendant for special damages for breach of contract that, in case it failed to recover the same, it contemplated presenting a claim to the Legislature of the state for payment of the amount withheld; there being no pretense that the state was under any legal liability therefor.

3. DAMAGES—ASSESSMENT—SPECIAL DAMAGES—QUESTION FOR JURY.

An issue as to the right to recover special damages for breach of a contract *held*, under the evidence, one for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 533, 534.]

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Frank S. Dunshee (Clinton R. Dorn and Irving C. Johnson, on the brief), for plaintiff in error.

James P. Hewitt (Ambrose Risdon, A. C. Parker, and Craig T. Wright, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. The Sturtevant Company sued the Iowa Company for a balance due on a contract for the sale and delivery of machinery. Defendant admitted the sale and delivery, pleaded a payment of $4,020 on account, and set up a counterclaim for damages occasioned by plaintiff's failure to deliver the machinery according to contract. The trial resulted in a verdict for plaintiff for the balance due on the contract, a verdict for the defendant on its counterclaim for an item of $871.90 for loss of laborers' time occasioned by plaintiff's delay, and a denial by direction of the court of defendant's further claim for an item of $1,475. Defendant prosecutes error solely on account of that denial.

Was there any substantial evidence entitling the defendant to go to the jury on that item? The facts are these: The defendant, the Iowa Company, on May 27, 1905, made a contract in writing with the state of Missouri to equip the State Normal School at Cape Girardeau with machinery and appliances for lighting, heating, and ventilating the building. The contract obligated defendant to complete and fully install the work on or before October 15, 1905, and contained a stipulation requiring the payment of $25 per day to the state for each and every day's delay in performance after the date so fixed. The learned trial judge ruled in view of the circumstances attending the case that this stipulation was enforceable as between the parties to that contract as a reasonable and proper provision for liquidated damages as distinguished from a penalty, and no contention is now made to the contrary. Defendant not being a manufacturer of the required machinery and appliances, on June 6, 1905, entered into a written contract with plaintiff, the Sturtevant Company, whereby the latter obli-

gated itself to furnish and deliver the same f. o. b. cars at Cape Girardeau within one month thereafter, that is, on or before July 6, 1905. Plaintiff failed to perform its part of the contract within the stipulated time. It shipped nothing until October, and then only a part of the machinery. The balance followed, some in November and some as late as January, 1906. On the completion of the work defendant was required to allow $25 per day, the stipulated liquidated damages for 59 days' delay, or a total sum of $1,475 which was in settlement deducted from the amount otherwise due the defendant from the state of Missouri according to the terms of the contract. The trial judge sustained objections to some of the evidence offered in support of defendant's right to recover this item from plaintiff, and all of it was ultimately by direction of the court withdrawn from the consideration of the jury.

The court assigned as grounds for its action (1) that it was not provided in the contract between plaintiff and defendant that there should be any damages in case of failure to furnish the machinery within the stipulated time; and (2) that it did not appear that defendant had been charged with this item in settling with the state of Missouri or that it had sustained any loss by reason of the delay. The first ground is clearly untenable. The rule governing the recovery of special damages for the breach of a contract has been frequently stated by this court, and most recently in the case of Taber Lumber Co. v. O'Neal (C. C. A.) 160 Fed. 596, where it is said:

"Such damages, as distinguished from those ordinarily sustained, can be recovered only when they are the result of special circumstances known to the parties at the time the contract was made, when they are the natural and direct result of a breach and when they can be ascertained with reasonable accuracy."

To the same effect are the cases of McDonald v. Kansas City Bolt & Nut Co., 149 Fed. 360, 79 C. C. A. 298, 8 L. R. A. (N. S.) 1110, and the many other cases cited. There was, in our opinion, ample evidence tending to bring the defendant's claim within the protection of this rule.

Defendant's secretary and general manager testified that at the time of executing the contract between plaintiff and defendant he informed the plaintiff that his company was under contract obligation to finish the entire work of installing the machinery in the Normal School on or before October 15, 1905, and also that it was liable to pay $25 per day for each day's delay thereafter. This evidence taken in connection with the stipulation in the contract requiring plaintiff to ship all the machinery before July 6th tends to show knowledge by plaintiff of such special circumstances as might occasion unusual damages to defendant if the former failed to deliver the machinery in due time, and also tends to show that such damages would be the direct and natural consequences of such failure. It is of no consequence, in our opinion, that a statement of the circumstances was not contained in the formal contract itself. Knowledge of them brought to plaintiff in any manner at the time of entering into the contract served the required purpose of warning it of the special peril which might attend

the failure to keep its engagements and subjects it to the special damages likely to follow and reasonably to be apprehended from such failure. Plaintiff made the contract in contemplation of the special circumstances so known to it, and, in case of breach, is liable for the natural and proximate result'thereof.

Does it so clearly appear that defendant sustained no loss by plaintiff's delay as to justify the court's action in withdrawing the claim therefor from the consideration of the jury? The evidence is uncontradicted that the defendant did not complete its work until 77 days after the limit of time prescribed in its contract with the state. The state conceded that it was itself responsible for the delay to the extent of 18 days and charged to defendant the agreed sum per day for the balance, 59 days, amounting in the aggregate to $1,475. Prima facie the failure to perform within the time limited created a liability against the defendant in favor of the state for the agreed amount of the liquidated damages; but this, of course, would not create any liability against plaintiff unless it had, with the knowledge of the special circumstances, in some way occasioned the delay. If plaintiff did so occasion the delay, it ought to be and is responsible for its consequences. The evidence is within a narrow compass. Defendant's secretary and general manager testified that the delay in getting the machinery and appliances from plaintiff within the time fixed by the contract alone caused the delay in the execution of its contract with the state. He also testified, in substance, that his company could not finish its work until the Sturtevant engines and other machinery arrived. Suffice it to say that there was evidence amply sufficient to go to the jury tending to show that the failure of the Sturtevant Company to make delivery of its machinery within the agreed time occasioned some if not all of the delay in the performance by defendant of its contract with the state.

The learned trial judge said that it does not appear that defendant has been charged with the item in question by the state, but that it does appear that plaintiff has a pending claim against the state for the item in question as the balance due on the contract price. We think this statement discloses a misapprehension of the facts of the case. The only evidence on this subject is that given by the secretary and manager. He testified that his company had a settlement with the state authorities of Missouri; that the state deducted from the contract price $1,475 in money because of his company's delay in performance; that his company settled the matter with the state on that basis, that is, on the basis of admitting that there were $1,475 due to the state as liquidated damages for failure to perform the work in time. The only indication to the contrary is a letter written by Lewis Houck, the chairman of the board of regents of the Normal School to defendant's secretary and manager under date April 19, 1907, a year and a half after the time of performance of the contract had expired. As this letter seems to be the basis of the court's rulings we reproduce it so far as relevant. It is as follows:

"In regard to the $1,475 which we deducted from your contract price as a penalty, we have done nothing, expecting that you would appear before the Legislature and make your claim. * * * The board at no time made any

promise 'that it would undertake to prosecute your claim before the Legislature, but did tell you, and I individually promised that I would recommend the matter to the committee on appropriations as strongly as I could and was ready to do so, but when you failed to apply or appear or have a representative at Jefferson City to urge the matter I supposed you had concluded to let the matter go. * * * I do not think there would have been the least trouble for you to have secured an appropriation for this amount from the Legislature, and of course, it will not be too late even at the next session to urge your equitable claim, but you will have to look after it personally and must not expect us to act as your agents in such a matter as that."

Conceding, but not deciding, that the Houck letter became competent evidence in connection with the examination and cross-examination of plaintiff's witness, its purport does not seem to us of any importance. The legitimate inference to be drawn from it is that defendant had at some time indicated a purpose to secure a remission of the state's claim for liquidated damages by legislative enactment. We fail to discover in such intention, if it existed, anything inconsistent with the existence of a valid claim against the plaintiff on the claim. It is frequently true that a claimant has more than one legal or equitable remedy; to say nothing of the moral obligation which oftentimes impels right thinking persons to action. Defendant's secretary and manager frankly admitted that, if he did not succeed in getting satisfaction from the plaintiff, it was his intention to try to secure favorable action by the Legislature. It is not pretended that the state was under any legal obligation to make the loss good to defendant. The claim against the state is one, if any, of imperfect obligation only and cannot in itself affect the legal liability of plaintiff to defendant one way or the other. A different result would, of course, follow if the state had acted upon the claim and remitted the damages. Then there would have been no loss sustained by the defendant by reason of the delay. Counsel for plaintiff argued orally that as the state occasioned 18 days of the delay in question, and, as plaintiff was not a party to the adjustment between defendant and the state, it was exonerated from any liability for the liquidated damages. Inasmuch as this question was not raised in the court below nor presented in the brief of counsel so as to afford defendant an opportunity to meet the contention, we refrain on this writ of error from expressing any opinion on the legal effect of such facts.

Our conclusion is that the court erred in excluding and withdrawing the evidence in question from the consideration of the jury. Whether or not the obligation of defendant to perform its work within the time specified and subject to the terms specified in its contract with the state in the way and with the results already pointed out and considered was known by plaintiff when the contract between it and defendant was executed, and whether or not plaintiff's delay occasioned any part of defendant's delay and consequent loss and damage, and, if so, how much, are, as the case now appears, questions for the jury. Notwithstanding the fact that defendant admitted that it was liable to the state for the amount in question that admission does not conclude plaintiff as to the liability. That issue with the others must be tried de novo between the parties to this suit.

The judgment is reversed and the cause remanded for a new trial.