CASE 44.—ACTION BY R. L. BERRY AGAINST MARY C. FELAND.—November 12.

# Feland v. Berry

Appeal from Lincoln Circuit Court.

N. W. UTLEY, Special Judge.

Judgment for plaintiff. Defendant appeals.—Affirmed.

1. Appeal and Error—Cross-Appeal—Failure to Prosecute.—Appellee's failure to prosecute a cross-appeal is a waiver of rulings against him.

2. Landlord and Tenant—Cropping Contract—Construction.—A cropping contract provided that the landlord was to have a 12-acre tobacco barn built, she to pay the cost of the same, the tenant agreeing to attend to the building of the barn, and that all labor should be at a reasonable price. Held, That the landlord was bound to furnish on the ground material to build the barn, the tenant being only required to attend to the work of putting up the building, and to procure the workmen to be paid by the landlord, so that the landlord was liable for injury to the tenant's tobacco crop because of her failure to furnish materials for the barn in time to allow its erection before the crop was injured.

3. Indemnity—Conclusiveness—Evidence.—Where a tenant, with his landlord's consent, sublet half of the tobacco land he had agreed to plant under a cropping contract, in which the landlord agreed to build a tobacco barn to house the tobacco, which she failed to do, resulting in the loss of a large part of the sublessee's tobacco, as well as that of the tenant, and the sublessee recovered judgment against the tenant for the damages sustained, such judgment, while not conclusive against the landlord, was admissible against her to establish the tenant's damages; it further appearing that the tenant employed counsel and made a reasonably efficient and skillful defense in the suit in which the judgment was recovered against him.

Feland v. Berry.

4. Damages—Contract—Breach.—Where defendant was notified, when a contract was made, that it was made with reference to a subcontract, on defendant's breach plaintiff could recover from defendant damages, caused by his being compelled to break the subcontract, because of defendant's breach of the original contract.

5. Landlord and Tenant—Cropping Contract—Breach—Damages. —Where, when plaintiff made a cropping contract with defendant, and assumed one-half of the expense of supporting both families, who lived together, defendant's family was composed of herself, her husband, and daughter, and the family was increased by defendant's son afterwards becoming a member without plaintiff's consent, plaintiff was entitled. to recover for the additional expense imposed on him by becoming compelled to furnish part of the son's support.

P. M. McROBERTS and J. W. ALCORN for appellant.

POINTS AND AUTHORITIES.

1. If the terms of a written contract are vague, uncertain or ambiguous parol evidence is competent to enable the court to arrive at the meaning of the contract. (Chapman v. Clements, 22 Ky. Law Rep. 17; Craft v. Bates, 20 Ky. Law Rep. 1413; Marshall v. Piles, 3 Bush 252.)

2. And the court may consider the situation and surroundings of the parties in order to arrive at their real intentions. (Cram v. Williams, 23 Ky. Law Rep. 689; Colson v. Chenault, 20 Ky. Law Rep. 226; White v. Booker, 4 Metc. 268; Thompson v. Thompson, 2 B. M. 166.)

3. The concurrent contemporaneous interpretation of the parties as to that part of the contract is entitled to great if not controlling influence. (Schuster v. Snawder, 31 Ky. Law Rep. 254; 11 Am. & Eng. Ency. of Law (1st Ed.) 579.)

4. The Virginia Hospitality Act.

5. A judgment in a case between a stranger and one of the parties to a pending litigation is not competent against one of the parties to the pending litigation who was not a party to the action in which that judgment was rendered.

G. B. SAUFLEY for appellee.

POINTS AND AUTHORITIES.

1. The judgment recovered by Clarke v. Berry may, in this

Feland v. Berry.

action, be recovered by Berry from Mrs. Feland, the appellant. (Hadley v. Baxendale, 9 Exch. 341; Cyc. col. 13, pp. 34-35; Elizabethown R. R. v. Pottinger, 10 Bush 185; Bluegrass Cordage Co. v. Luthy, 98 Ky. 585; I. C. R. R. v. Nelson, 97 S. W. 757; I. C. R. R. v. Mossbarger, 91 S. W. 1121; Am. Bridge Co. vs. Glenmore Distillery Co., 107 S. W. 279 (decided Feb. 4, 1908); Am. & Eng. Ency. of Law (2nd Ed.), vol. 1, pp 590-591; Grebert-Borgnis v. Nugent, 15 Q. B. Div. 85; Sawdon v. Andrew, 30 L. T. ... S. 23; Cort v. Ambergate R. R. Co., 17 Q. B. 127; Murdock v. Jones, 3 N. Y. App. Div. 221; Smith v. Flanders, 128 Mass. 322; Maloney v. Brady, 18 N. Y. Supp. 757, 19 ⁻J. Y. Supp. 911; Morgan v. C. & O. R. R., 105 S. W. 961; Pennsylvania R. R. v. Roy, 102 U. S. 451; Samuel v. Hall, 9 B. M. 374.)

OPINION OF THE COURT BY JUDGE SETTLE- Affirming.

The appellant, Mary C. Feland, is the owner of and resides upon a valuable farm in Lincoln county. Her husband being an invalid, appellant, in October, 1905, induced the appellee, R. L. Berry, her son-in-law, then a resident of Bath county, to remove to her farm and cultivate 175 acres thereof in the year 1906, under the following contract: "This contract entered into between Mrs. A. M. Feland, party of the first part, and R. L. Berry, party of the second part, said Mrs. Feland rents to R. L. Berry 175 acres of land more or less to cultivate 100 acres for corn, 50 acres for hemp, and 20 acres for tobacco, the corn to be well cultivated by party of the first part and one-half of said corn to be put in crib for Mrs. Feland and her half of fodder to be set up and tied, one field of corn known as Pike field, and two more fields on each side of garden, said party of the first part rents said second party 50 acres for hemp, bluegrass sod, known as hill field, said second party agrees to cultivate well and deliver Mrs. Feland when it is sold, said R. L. Berry gets three-fifths of money and Mrs. Feland two-fifths; also 20 acres for tobacco, 15 acres in backwoods, and rest 5 in

hill field, said R. L. Berry agrees to raise this tobacco and give Mrs. Feland one-half of same in bulk in winter order, said R. L. Berry agrees to furnish all seed, tools, and teams that are necessary to cultivate said crop, Mrs. Feland agrees to graze (in season) six work mules, three horses, and two milch cows free of charge for R. L. Berry, also pay him in money, $160.00 rent on house and land for tenant, also lets him have a lot for his stock, known as bull lot. Said R. L. Berry is to live in the house with said Mrs. Feland, and each to furnish one-half of living expenses. R. L. Berry is to keep two hands and Mrs. Feland is to board one for work done for such as cutting wood, working in garden, milking and feeding and attending to her stock. Said R. L. Berry agrees to cut weeds around fencing where he cultivates. This agreement for land is for the year 1906. R. L. Berry has the right to stay with Mrs. Feland until he has time to save his crop. Said Mrs. Feland agrees to have a twelve-acre tobacco barn built, she to pay all costs for same, and said R. L. Berry agrees to attend to the building of same, and all labor to be at a reasonable price for same." Pursuant to the above contract appellee took up his residence at the home of appellant, and undertook the cultivation of the 175 acres of land as therein provided. At that time appellant's family consisted of herself, husband, and an unmarried daughter. The contract between appellant and appellee required the latter to cultivate 100 acres of the land rented by him in corn, 50 acres in hemp, and 20 acres in tobacco, the corn and tobacco to be equally divided between appellant and appellee, the former to be paid two-fifths and the latter three-fifths of the hemp. It will be observed that the contract also provides: "Said Mrs. Feland agrees to have a twelve-acre tobacco barn built, she to pay

all cost for same; said R. L. Berry agrees to attend to
the building of same and all labor to be at a reasonable
price.'' It was contemplated by the parties, and
meant by the contract, that the barn was to be of suffi-
sient size to store all the tobacco raised on the 20 acres
of land, as the first cutting would, after hanging a few
days in the barn, so shrink as to allow room for the sec-
ond or more cuttings when made. When the contract
in question was made, appellee informed appellant
that he had, subject to her approval, made a contract
with D. L. Clark, whereby Clark was to cultivate 10
acres of the 20 acres allotted to tobacco, which appellee
agreed he might house in the barn to be erected by
appellant, to which she readily assented. Appellant
was to receive one-half of the tobacco raised by Clark
under the contract with appellee, and Clark the other
half, appellee to remain responsible to appellant for
the proper cultivation and division of the tobacco by
Clark. The 20 acres of land were cultivated in tobacco,
one- half by appellee, and the other half by Clark;
but, as the barn was not completed by appellant by
the time the tobacco on the 20 acres was cut and ready
to be housed, it was so injured by overripeness, frost,
and exposure to the weather that much of appellee's,
and practically the whole of Clark's, tobacco was ren-
dered unmarketable and worthless. In January, 1907,
appellee was sued by Clark for the injury to and
destruction of the tobacco raised by the latter on the
10 acres of land, resulting from the failure of the
former to furnish him a barn in which to store it.
Appellee made defense to the action, but the trial
resulted in a verdict and judgment in Clark's behalf
for $500, and this sum, together with $59 costs ad-
judged Clark in the action, appellee paid. He there-
upon instituted the present action against appellant,

seeking to recover of her the $559 he paid in satisfaction of Clark's judgment, and further damages to the amount of $560, for the loss of a large part of the tobacco he (appellee) raised upon the 10 acres cultivated by him, all of which damages, it was alleged, resulted to him from a breach of the rent contract, caused by the failure of appellant to build the barn in time to store the tobacco raised by himself and Clark.

In addition to the damages mentioned appellee also sought to recover of appellant in the action $75 damages for a further breach of the rent contract, alleged to have been committed by her in taking into her house, after appellee removed to her residence, her son, A. M. Feland, Jr., and making him a member of her family, the son doing nothing to support himself, or in rendering assistance in running the farm; and this, it was averred, added to appellee's burden by putting him to additional labor and expense, as under his contract with appellant he was compelled to provide "one-half of the living expenses" of the family. It was further averred in the petition that, at the time the rent contract was entered into, appellant agreed that the family, the half of whose support he was required to provide, should be composed of appellee and his wife, appellant, her husband, and unmarried daughter. That appellant then promised him her son should not reside with or become a member of the family, and that in inviting and receiving him into the family she violated that promise and her contract with appellee, and increased the expense of maintaining the family during the son's stay with them at least $150, one-half of which, $75, appellee was compelled to pay, and did pay. We omit mention of other items of damages claimed in the petition by appellee, as they were rejected by the lower court, and appellee has not taken

a cross-appeal. Appellant's answer controverted the affirmative matter of the petition, and by way of counterclaim sought to recover of appellee damages for certain alleged violations, on his part, of the contract between them; that it is charged that, while under the contract appellant was to pay for the material and work of building the barn, appellee by the contract was required to procure the material, which he failed to do until much of the tobacco produced by him and Clark had been injured and destroyed, although she was all the time ready and able to pay for such material and labor, and that the alleged negligence of appellee in this particular caused the injury to and loss of the tobacco of appellee and Clark, and of her part of it as well, whereby she was damaged $700, for which sum she prayed judgment. The other items of damage asserted by the counterclaim were based upon the alleged improper cultivation by appellee of the corn and hemp crops, and these, as we shall see, were by the judgment of the lower court allowed appellant.

The averment of the answer and counterclaim were controverted by reply, and upon the issues thus formed the case went to trial before the court, the parties having waived a jury. The court's findings of fact, as shown by the record, were: First, that appellee violated the contract, in that he failed to properly care for the corn and hemp crops; second, that appellant violated the contract, in that she failed to furnish on the ground material for the building of the barn in time, and that the barn was not built because of her fault; third, that A. M. Feland, Jr., became a member of appellant's family, which was not contemplated by the parties at the time the contract was entered into. Resulting from the above conclusions of fact,

the court found as a matter of law: First, that appel-
lant was entitled to recover of appellee on her counter-
claim $150; second, that appellee was entitled to re-
cover of appellant the sum of $559, the amount of the
Clark judgment and cost, and the further sum of $25,
on account of additional expense for maintaining A.
M. Feland. Jr., as a member of appellant's family.
Upon these findings of law and fact judgment was
entered in appellee's favor for $434. Appellant was
refused a new trial, hence this appeal.

The failure of appellee to prosecute a cross-appeal
makes it unnecessary for us to consider the ruling of
the circuit court in allowing appellant $150 damages
for appellee's improper cultivation of the corn and
hemp crops. We concur, however, in that court's con-
clusion that appellant's failure to furnish on the
ground material for the building of the barn pre-
vented its erection by appellee in time to house and
save the tobacco. The contract declares that, "Mrs.
Feland agrees to have a twelve-acre barn built, she to
pay all cost for same. * * *" The language quoted
imposed no duty upon any person other than appellant
to build the barn. By necessary implication she was
to furnish the material for the building, and place, or
cause it to be placed, where the building was to be
erected; that is, on the ground. The next words of
the clause relating to the barn, are: "Said R. L. Berry
agrees to attend to the building of the same. * * *"
There is not here an intimation that appellee was to
see to the selection of the material, to bargain for it, or
have it carried to the place where the barn was to be
erected. But he was required to "attend to the build-
ing of same;" that is, to control the work of erection
or construction, after the material was placed on the
ground. The remaining words of the clause are:

"And all labor to be at a reasonable price." This sentence,, in connection with the preceding words "Said R. I, Berry agrees to attend to the building of same," defines appellee's whole duty with respect to the barn. He was simply to attend to the work of putting up the building and to procure the workmen; but, as to the latter service, he was required to get the workmen at reasonable prices, for they were to be paid by appellant, and the contract limited him to the employment of only such labor as could be had at "a reasonable price." If it had been contemplated by the parties to the contract that appellee should bargain for the material for the barn and have it furnished on the ground. that instrument would, we think, have been made to contain a provision restricting him to the payment of reasonable prices in purchasing material as it restricts him to reasonable prices in procuring workmen for the building of the barn. The absence of such restriction as to the price of material is strongly pursuasive that it was the purpose of appellant to retain in her own hands the purchase of all material for the barn. So our conclusion is that, in obligating herself by the contract to "have a barn built," appellant undertook to build the barn and furnish everything to complete it, except that she was relieved of hiring workmen and superintending the building; that part of the work having been imposed by the contract upon appellee, although the workmen were to be paid by her.

Our construction of the contract appears to be sustained by much of the evidence. Appellee does not seem to have been known by the people of Lincoln county, and was apparently without money or credit. Although appellant was to pay all cost of building the barn, it appears from the evidence that she neither

furnished, nor offered to furnish, appellee or any other person money with which to buy material or hire workmen. At first she insisted that the material for the barn should be made from timber on her farm, and then abandoned this idea. She seems also to have refused to engage one Barnett, the owner of a sawmill, to saw the lumber, though appellee had made for her a tentative contract with Barnett to do so. Afterwards she changed her mind, and concluded to contract with Barnett, but it was then too late, his mill had been removed from the community. At another time she commenced to get some of the material for the barn from a tract of knob land adjacent to her farm, but found the timber there insufficient in quantity. By neglecting appellee's advice, interfering with his plans to assist her, and otherwise delaying work on the barn, she prevented its completion until the tobacco produced by appellee, from overripeness and exposure to inclement weather, was greatly injured and that of Clark from the same cause was practically destroyed. Appellee saved a part of his by storing it in stock barns on appellant's farm, but no place could be secured for the tobacco of Clark. There seems to have been an opportunity afforded appellee at one time to rent a barn in the neighborhood from one Hackly, but it could be reached only by a rough road, hauling the tobacco in its green state over which would have greatly bruised and injured it. Besides, when Hackly offered to rent appellee the barn, Clark's tobacco, which ripened before appellee's, had been substantially all cut, and from overripeness and exposure to inclement weather ruined in the field. Moreover, when Hackly's barn could have been rented, it was believed by appellant and appellee that appellant's barn could still be finished in time to store

therein the larger part of appellee's crop, as it only lacked a roof, and but for appellant's persistency in trying to get boards from her knob land, where they were not to be had, the roof would have been completed in time to save the greater part of appellee's tobacco. It is useless to consider whether appellee was negligent in failing to rent Hackly's barn, or whether such negligence caused injury to his own tobacco, as the lower court allowed him no damages for injury to or the loss of his tobacco.

It is, however, insisted for appellant that the amount of the judgment obtained by Clark against appellee can not be recovered by the latter of appellant in this case. We do not think this contention sound. It was, in substance, alleged in the petition, and established by the evidence, that when appellant contracted to build the barn she knew Clark was to cultivate in tobacco 10 of the 20 acres appellee had agreed to produce on her land, and that the barn she was to build was to be used for housing Clark's tobacco as well as appellee's. The petition further alleged that in Clark's action against him appellee "made a reasonably efficient and skillful defense, employed counsel," etc., and that "judgment was duly rendered in favor of Clark for $500. and $59 costs, which was paid by Berry." The averments quoted were not denied by appellant's answer. As between Clark and appellee, it was clearly the latter's duty to furnish the former a tobacco barn, and equally clear that appellee could not escape liability for the failure to furnish the barn upon the ground that it was appellant's fault. As between appellee and appellant, the issue was as to whose fault it was, and as to the construction of the contract. Appellee's action against appellant rests upon the rule of contract law that

where the defendant in an action for breach of contract is shown to have entered into the contract with knowledge of a special use or subcontract by plaintiff, upon the breach of the original contract the latter will not be confined to nominal damages, but may recover such damages resulting to him from the breach as may be held to have been reasonably contemplated by the parties in making the contract. In other words, as said in 13 Cyc. 34, 35 (quoting from the leading case of Hadley v. Braxendale, 9 Exch. 541): "Where special circumstances have been communicated to a party at the time of the making of the contract, which go to show that the breach will involve special damages, such damages may be recovered, although not the result of an ordinary breach. When a contract is made under special circumstances, and those circumstances are communicated to one of the contracting parties by the other, the damages resulting from the breach of the contract which they would reasonably contemplate are the amount of the injury which would ordinarily follow from a breach under those special circumstances." Again, on page 35 of the same volume, it is said: "When a party makes a contract, and at the time notifies the defendant, that such contract is made with reference to a subcontract already entered into or contemplated, upon a breach he will not be confined to nominal damages, but may recover such damages as necessarily result from the breach."

In the instant case appellant, at the time of the making of the rent contract with appellee, was not only informed of his contemplated subcontract with Clark, and of his need of the barn she agreed to build, but she consented to the contract with Clark. The above doctrine has been approved by this court in

numerous cases. Elizabethtown, etc., R. R. Co. v.
Pottinger, 10 Bush 185; Bluegrass Cordage Co. v.
Luthy, 98 Ky. 588, 33 S. W. 835, 17 Ky. Law Rep.
1126; Illinois C. R. R. Co. v. Nelson, 97 S. W. 757, 30
Ky. Law Rep. 114. Perhaps the latest reaffirmance
by the court of the rule in question is stated in Ameri-
can Bridge Company v. Glenmore Distilleries Co., 107
S. W. 279, 32 Ky. Law Rep. 873, where, after citing
many authorities from the earliest down, it is said:
"And this rule, so far as we know, has never been
successfully questioned since." As appellant was not
a party to the action of Clark v. Berry, it can not
technically be said she was concluded by the judgment
therein rendered, either as to the issues involved or
the amount recovered, yet that judgment determined
the liability of appellee to Clark, and gave him a right
of action against appellant; and the proof in this case
conclusively shows that the damages he sustained by
her breach of the contract between them was cer-
tainly as great in amount as the judgment Clark
recovered against him. Therefore, if entitled to
recover at all, he should have received judgment for
the amount the lower court allowed him by way of
damages.

We do not think the allowance to appellee of $25, on
account of his maintenance of appellant's son, was
improper. In making him a member of her family
appellant violated her contract with appellee. This
allowance, properly speaking, was not for the board
of her son, which, it is claimed, could not be recovered
in the absence of a contract to pay board. In enter-
ing into the contract with appellant, appellee assumed
the burden of bearing one-half of the expense of sup-
porting the family, to be composed of himself and wife,
appellant, her husband and daughter, and the family

expenses were increased by the son's becoming a member of the family by the act of appellant, and without appellee's consent, which placed upon him an additional burden, for which appellant should compensate him; and, according to the evidence, the amount allowed him is little enough for the time appellant's son remained with the family

We must, in an action at law, where the trial is had before the court and without the intervention of a jury, give to the judgment the same weight we would accord to the verdict of a properly instructed jury. Hence the judgment should stand, unless based on substantial error, or unsupported by evidence. We have found no prejudicial error, and there was much evidence to support the trial court's findings. Wherefore the judgment is affirmed.,