## McKIBBIN v. PIERCE. (No. 1065.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 13, 1916. Rehearing Denied Jan. 17, 1917.)

1. DAMAGES ☞23—BREACH OF CONTRACT—CONSEQUENTIAL DAMAGES.

Where one party has defaulted a contract with another on account of a third party's default, if third party knew of circumstances creating special damages, such damages are recoverable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58, 62; Dec. Dig. ☞23.]

2. LANDLORD AND TENANT ☞116(4)—TENANCY FROM MONTH TO MONTH—TERMINATION.

Where tenant paid rent monthly in advance, agreeing to surrender premises on demand, this was a periodic monthly tenancy, and landlord could not demand premises until expiration of the month.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 395, 400; Dec. Dig. ☞116(4).]

3. DAMAGES ☞22, 23—BREACH OF CONTRACT—"DIRECT DAMAGES"—"CONSEQUENTIAL DAMAGES."

Damages which naturally follow the breach of the contract, when the defaulting party is without notice of conditions making special liability, are direct damages, while damages which follow on account of special conditions, known to defaulting party when contract is made, increasing the liability, are consequential damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58–63; Dec. Dig. ☞22, 23.

For other definitions, see Words and Phrases, First and Second Series, Direct Damages; Consequential Damages.]

4. DAMAGES ☞23—CONSEQUENTIAL—NOTICE—PROTEST.

Where party has notice of special conditions producing increase of liability and makes contract, protesting he will not be liable for such damages, the other party not consenting thereto, he will be bound to such damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58, 62; Dec. Dig. ☞23.]

5. DAMAGES ☞23 — CONSEQUENTIAL — CONTRACT REFERRING TO—NOTICE UNNECESSARY.

Where agreement is made with reference to special conditions producing increased liability, notice of such conditions is not necessary.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58, 62; Dec. Dig. ☞23.]

6. LANDLORD AND TENANT ☞144—AGREEMENT TO SURRENDER—NOTICE OF SPECIAL LIABILITY.

Where tenant had notice of landlord's penalizing contract with future tenant and agreed to vacate, his attempted repudiation of the increased liability will not excuse him.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 458, 459, 601; Dec. Dig. ☞144.]

Appeal from District Court, Wilbarger County; J. A. Nabers, Judge.

Suit by Hall Pierce against H. F. McKibbin. Judgment for plaintiff, and defendant appeals. Affirmed.

J. Shirley Cook and J. E. Doran, both of Vernon, for appellant. Berry, Stokes & Morgan, of Vernon, for appellee.

HENDRICKS, J. Hall Pierce sued H. F. McKibbin to recover damages for the breach of an alleged contract to deliver possession of a certain building in the town of Vernon, and upon the submission of special issues, and findings by the jury, in response thereto, a judgment was rendered in favor of Pierce, the landlord, against McKibbin, the tenant.

T. L. Pierce, the father of Hall Pierce, formerly owned the particular brick building occupied by McKibbin; he leased the same to defendant, McKibbin, for a term of two years, beginning the 1st day of May, 1910, expiring the 1st day of May, 1912; McKibbin to pay $600 a year rent, payable in installments of $50 per month. At the end of the two years' term McKibbin held the premises under T. L. Pierce, under a monthly tenancy; the rent at the beginning of this tenancy having been raised to $60 per month.

On March 19, 1913, T. L. Pierce conveyed the premises to his son, Hall Pierce, the plaintiff herein; the periodic monthly tenancy continued as before, at the same rental of $60 per month.

It is claimed by the plaintiff, Hall Pierce, that about the 20th day of April, 1915, while defendant was holding the premises by the month as aforesaid, that he notified McKibbin, the tenant, through his agent, T. L. Pierce, that he could not continue to use and occupy the premises longer than the 1st day of May, 1915, unless he (McKibbin) "would enter into a written contract for a definite time; that McKibbin refused to enter into such a contract, and agreed that plaintiff should have possession thereof at any time he might demand it after that time."

T. L. Pierce continued to act as the authorized agent of his son, Hall Pierce, the plaintiff herein, and the claim is further made that on the 17th day of September, 1915, defendant, McKibbin, was notified that plaintiff desired possession of said premises on the 1st day of October, 1915, and demanded possession on that date; that defendant then requested plaintiff to permit him to continue the possession until October 15, 1915; that defendant was then informed that plaintiff had an opportunity of leasing the premises if he could give possession on the 1st day of October, 1915, but that if he could prevail upon Trevathan, the new tenant, to wait until the 15th of October he would comply with the defendant's request; that Trevathan agreed to wait, and plaintiff then agreed with the defendant for the latter to hold possession until the 15th of October, with the distinct understanding that the possession of said premises would be delivered not later than that date, and, relying upon defendant's promises, he (the plaintiff) entered into a contract with Trevathan, leasing the building to him for one year, agreeing to give Trevathan possession on October 15th, and to pay him $10 per day, as liquidated damages, for each day after October 15th that he

might fail to deliver such possession; that defendant had notice of the terms of the Trevathan contract when he promised to surrender the premises.

The jury found, besides other facts, that McKibbin was renting the store building from Pierce by the month, and that McKibbin informed Pierce that he would vacate the building by the 15th of October, 1915; also found that $650 would "compensate plaintiff for any reasonable necessary loss * * * by not having possession of the building * * * on the 15th of October, 1915"; and further found that the amount ($650) "would compensate plaintiff for any reasonable necessary loss * * * by not having possession of the building delivered on the 1st day of November, 1915."

In answer to a special issue requested by plaintiff, the jury additionally found that McKibbin was "holding the building at will."

[1] The amount found by the jury as reasonable compensation for plaintiff's loss is not complained of by appellant. It probably could not be questioned but that, where one party has defaulted with another on account of a third party's default with him, if there is proof of knowledge to the third party at the time of his contract of special circumstances which make different damages, other than those ordinarily implied by the contract, the natural and probable effect of the breach, such damages, as consequential damages, are recoverable, whether liquidated or otherwise. Northwestern Steam Boiler & Mfg. Co. v. Great Lakes Engineering Co., 181 Fed. 39, 104 C. C. A. 52; Iowa Mfg. Co. v. Sturtevant Mfg. Co., 162 Fed. 460, 89 C. C. A. 346, 18 L. R. A. (N. S.) 575; Halstead Lumber Co. v. Sutton, 46 Kan. 192, 26 Pac. 444; Feland v. Berry, 130 Ky. 328, 113 S. W. 425; Meyer v. Haven, 70 App. Div. 529, 75 N. Y. Supp. 261; Sutton v. Wanamaker, 95 N. Y. Supp. 525; Illinois C. R. Co. v. Southern Seathing & Cabinet Co., 104 Tenn. 568, 58 S. W. 303, 50 L. R. A. 729, 78 Am. St. Rep. 933; O. H. Perry Tie & Lumber Co. v. Reynolds, 100 Va. 264, 40 S. E. 919; Modern Steel Construction Co. v. English Construction Co., 129 Wis. 31, 108 N. W. 70; Shurter v. Butler, 43 Tex. Civ. App. 353, 94 S. W. 1084.

The last case cited (Shurter v. Butler, supra, 43 Tex. Civ. App. 353, 94 S. W. 1084) was one where a subcontractor delayed furnishing brick to a principal contractor; the latter having been required to pay liquidated damages to a city because of a failure to complete a sewer within a certain time. It appeared that the subcontractor knew when his contract was made that the work had to be completed within a certain time, and that the completion of the sewer depended upon his furnishing the brick promptly.

The other cases cited apply the same principle, and involve a similar state of facts, except that in some of them the augmented damages, arising out of the special course of circumstances, were not measured by a collateral contract for a liquidated amount.

[2] A repeated consideration and analysis of the facts as to the character of the contract of tenancy discloses, we think, this condition: When the two-year term was ended there was a tenancy from month to month, the rent payable monthly in advance. Assuming that Pierce's theory is supported by the record, that in April, 1915, on account of McKibbin's refusal to enter into a written contract, it was then agreed that McKibbin would surrender and Pierce could receive the building on demand; however, the record further shows that thereafter, to October 1, 1915, McKibbin continued to pay the rent monthly in advance as before. We think the tenancy was then reconverted into a periodic monthly tenancy. During the period from April, 1915, to October, of the same year, on account of the rent having been paid in advance by McKibbin, Pierce could not call for the building at any intervening period in the month for the purpose of repossessing the same on demand—this could not occur until the expiration of the monthly period. Chancellor Walsworth of New York, quoting the syllabus, which reflects the opinion, held:

"Where a party enters into the possession of premises under an agreement to accept a lease for twenty months, and subsequently refuses to accept the lease, he becomes by such refusal a tenant at will, or by sufferance, and may be ejected immediately. But if the landlord subsequently accepts rent from the tenant monthly, according to the original agreement, a tenancy from month to month is created, commencing from the time of entry." Anderson v. Prindle, 23 Wend. (N. Y.) 616.

While the facts are not the same, we think, though, the principle is applicable. Hence when McKibbin paid and Pierce received the monthly rents, in so far as the demand and the right of re-entry by the landlord are concerned, they would be measured by the law as applied to the contract, and necessarily re-entry would have to await its termination.

As to the question of alleged contract, with reference to the agreement to surrender the building on the 15th of October, 1915, we interpret the record as disclosing this condition: On the 17th day of September, 1915, Morgan, the agent of Pierce, was sent by the latter to McKibbin to ascertain when McKibbin would surrender the premises. Pierce and one Trevathan had been, on the same day, previously negotiating for a lease, and the latter, on account of the fall trade, and the character of his business, desired the lease to begin on the 1st of October. Morgan, on his mission, informed McKibbin of that fact, but the latter was apprehensive that he could not surrender the building that early, but stated to Morgan that he would get out the 15th of October, and to so notify the other parties, which statement Morgan reported to Pierce and Trevathan. Pierce then made the contract with Trevathan, leasing

him the building, also agreeing to pay him the sum of $10 per day as liquidated damages for every day he was in default in not delivering the premises. Morgan then reported to McKibbin in effect that Pierce would accept the former's offer to surrender the premises on the 15th of October, 1915; also informing him at that time of the other contract between Pierce and Trevathan. Morgan testified that he informed McKibbin—

"that Pierce told me to tell him he would hold him [McKibbin] for the $10 per day if he did not get out of there by the 15th; he said that he would not get under Mr. Pierce's contract for damages, but that he would back up his own contract, and that he would get out by the 15th."

Afterwards Trevathan wrote to Pierce that he wanted to be sure that he would get the building on the date mentioned. Before the 15th of October Morgan again went to McKibbin, testifying as to this visit as follows:

"I went in and asked McKibbin whether he would get out or not, and told him about Trevathan making this further inquiry; I told him Trevathan was worried about it, and that Pierce was worried about it and had sent me over there. He said he did not know whether he would get out or not; wanted to know why Trevathan could not run on down at Wichita and wait until he (McKibbin) could get into this other building. I told him all Pierce wanted was to satisfy Trevathan, and he said he was going down to Wichita on some other business in a few days and would see Trevathan about getting him to wait."

When McKibbin, on the first visit to Morgan, stated that he would deliver the building to Pierce on the 15th of October, it was not stated to McKibbin, nor contemplated by him, that there was any expectation of a penalty contract to be entered into between Pierce and Trevathan, as to the lease of the building. Such a special circumstance, affecting the measure of damages, cannot be imputed to McKibbin at that particular time.

Was there a contract between McKibbin and Pierce, obligating the former to deliver the premises to the latter on the 15th of October, 1915? If there was a contract, could McKibbin prevent his liability, which would ordinarily be produced by a knowledge of the special conditions, on account of his statement that he refused to get under Pierce's contract with Trevathan? We consider the two questions as merging into each other in this solution.

Associate Justice Denman said:

"The rule seems to be settled that plaintiff, in order to recover special damages for breach of a contract, must show that at the date of the contract defendant had notice of the special conditions rendering such damages the natural and probable result of such breach, under circumstances showing that the contract was to some extent based upon or made with reference to such conditions." M., K. & T. Ry. Co. v. Belcher, 89 Tex. 429, 430, 35 S. W. 6, 7.

The appellant predicates his denial of liability upon the theory that no contract was made; neither could the special damages be recovered as a result thereof if one were made, because the same were excluded by McKibbin when he made the statement that he refused to "get under" Pierce's contract with Trevathan.

We do not understand that any court has ever held, possibly with one exception, that the parties have in reality contracted for the special damages as a result of the breach where the special conditions have been merely imputed to the defaulting party when he made the contract; we think the philosophy of the rule is that the law makes the notice a basis, or a precedent condition, to the enlarged liability.

It is true we find expressions, and they are no doubt correct, when properly conceived, that the contract must be to some extent based upon the special circumstances, or made with reference thereto. "This appears from the language of the courts in many cases where the subject is discussed." Sedgwick on Damages, vol. 1, § 159.

The same author says, while this assertion is made, it is also the rule that the notice of special conditions need not be a part of the contract. Sedgwick, vol. 1, § 160. This author says that Justice Blackburn, in Horn v. Midland Railway (an English case) L. R., 8 C. P. 131, "said that in his opinion notice did not change the rule of damages unless it were such as to create a special contract."

Sedgwick's criticism of this doctrine attempted to be announced seems convincing. "It is to be observed that if this opinion is sound, it does away at once with the whole doctrine of notice. For if the notice of special circumstances is incorporated into the contract, that is, if the contract provides against the special loss, the loss, if it happens, is not a consequential, but is a direct, result of a breach of the contract, and, as such, is, of course, recoverable. The opinion of Lord Blackburn has not been supported by any decided case, and the weight of authority is against it." Id. § 160.

[3] We will use the terms "direct" and "consequential," as applied to damages, whether wholly appropriate or not. Damages which naturally follow from the breach of a contract, when the defaulting party is without notice of any special conditions that would increase the measure of liability, are "direct"; damages which follow on account of knowledge of special conditions, imputed to the defaulting party when the contract was made, and increasing the standard of liability, are "consequential."

In the case of direct damages the law necessarily imposes the measure whether or not the defaulting party possessed any knowledge whatever of the implied and natural consequences of the breach, or of the amount the other party would suffer on account of such breach. We also find many cases where, if the knowledge is complete of the special conditions and course of circumstances, the amount of the loss is not necessary to be known in order to charge the defaulting party with the consequential damages—the law

would continue to fix the measure, and the liability, based upon the knowledge of the special conditions; the defaulting party would not have to actually contemplate the amount of damages which would ensue if they follow as a consequence of the special conditions. We assume that, if a party were to actually make a contract upon a consideration, but before making the same merely states to the other contracting party that he would not in the event of default be bound by any direct damages, which the law would impose on account of the breach (contradistinguished from a contract where upon notice of special conditions consequential damages would ensue) if not accepted by the other as a part of the contract actually made, the law would continue to impose direct damages as the result of a breach. We think probably that the language used in the opinions and by law-writers that a contract must to some extent be based upon the special circumstances, or made with reference thereto, it is meant that knowledge or notice when imposed in the course of dealing as a preliminary to the execution of the contract is merely the predicate upon which the consequential damages would follow; otherwise parties could make such a statement and continue to make contracts and claim that the same were not made with reference to. the special conditions, and exclude damages which the law imposes.

[4, 5] The law, if the party had the notice, impresses the rule, and the party cannot exclude the rule by his mere statement that he will not be bound if he continues in making the contract. If the parties contract around the special circumstances, as Sedgwick well says, the question of notice is not an element which produce the damages; the agreement, expressly contracting with reference to the special conditions, would do away with the element of notice as a legal principle. If such special damages, dependent upon notice, were really a part of the contract in a contractual sense, as argued by appellant, we would ordinarily be met in cases of this character with the opposition rule, in attempting to prove the damage, that the same adds to a written contract and should be excluded.

"A verbal notice has been allowed to change the rule of damages, although the contract was in writing." Sedgwick on Damages (9th Ed.) vol. 1, § 160. Hence if a party about to enter into a contract has notice communicated to him by the other party of special conditions producing an increased liability, and actually thereafter makes the contract, though protesting that he will not be liable for such increased damages, if the other party does not agree that such damages will be excluded, we think the law, as a matter of policy, and rule, would stamp the liability as a result of the contract, though the party attempted to exclude them. His pro-

tection would be a refusal to make the contract.

[6] At first, we were concerned with the thought that when Morgan communicated to McKibbin the special conditions and McKibbin refused to be bound by the rule of damages arising on account of the special conditions, that the minds of the parties did not meet because McKibbin refused to accept as a part of his contract any special liability arising therefrom; Pierce, through Morgan, never assented to the protest; the record also shows that after the facts were communicated to McKibbin he continued to make the promise that he would deliver the building on the 15th of October, 1915, and it is inferable that thereafter on account of the contract having been made he went to Wichita Falls for the purpose of getting Trevathan to wait and continue his business at that place. There is some inference from the testimony of Morgan of an after recognition by McKibbin that he made a contract. If the doctrine is in reality dependent upon the notice properly communicated, as a preliminary condition to liability ensuing from the contract, and is not dependent upon the fact that they enter into the contract in a contractual sense, we do not think that an attempted repudiation of this liability to which the other party does not agree—of something which does not technically enter into the contract—prevents the minds of the parties meeting upon an offer and acceptance consummated between the parties upon a valuable consideration. The notice, of itself, continues the basis, applied to which the law stamps the liability.

We think the question considered is the controlling one in the case, and the discussion of other assignments is unnecessary.

The judgment of the trial court is affirmed.