CASE 50.—ACTION BY THE PULASKI STAVE COMPANY AND OTHERS AGAINST THE MILLERS CREEK LUMBER COMPANY AND OTHERS.—May 11, 1910.

## Pulaski Stave Co., &c. v. Miller's Creek Lumber Co. &c.

Appeal from Lee Circuit Court.

D. B. REDWINE, Circuit Judge.

From a judgment dismissing the petition plaintiffs appeal.—Reversed.

1.  Pleading—Objections—Waiver.—Plaintiff cannot recover an item of damages in an action for breach of contract which was stricken from the petition without objection.

2.  Assignments—Contracts Assignable—Logging Contract.—A contract is assignable, unless its assignment is forbidden by public policy, or it involves personal confidence reposed in one of the parties by the other, and a contract by which defendants sold and agreed to deliver to another a certain number of logs to be cut from a tract was assignable by the purchaser; the assignment not changing the terms of the contract or the bond given by defendant for faithful performance.

3.  Pleading—Demurrer—Admissions.—A demurrer to the petition admits material facts alleged therein for the purpose of the demurrer.

4.  Assignments—Validity—Ratification.—Where defendant and the guarantors on its bond for the faithful performance of the contract consented to the assignment by the purchaser of its contract to deliver a certain number of logs, and recognized and ratified it by delivering a part of the logs under the contract to the assignees, defendant and its guarantors

were estopped from denying the validity of the assignment.

5. Assignments—Contracts—Waiver of Nonassignability.—The nonassignability of a contract by reason of the personal confidence involved in its performance may be waived by the consent of the parties, so as to make it assignable.

6. Assignments—Jury Question—Waiver of Nonassignability.— In an action for breach of defendant's contract to deliver logs sold, brought by an assignee of the other party to the contract, whether defendant waived its right to personal performance by the other party, so as to make the assignment valid, held a jury question.

7. Guaranty—Nature of Liability.—Where the undertaking by which defendant's performance of a contract to deliver logs was guaranteed was a part of the contract, the guarantors were primarily liable for its breach; their relation being analogous to that of a surety.

8. Guaranty—Action—Joint Parties.—Civ. Code Prac. section 24, requires parties united in interest to be joined in a suit. Section 26 permits persons severally liable upon the same contract to be included in the same action at plaintiff's option, and by section 27, if two or more be jointly bound by a contract, the action thereon may be brought against all or any of them at plaintiff's option. Held, that where defendant sold and agreed to deliver logs by a written contract, and other parties to the same contract guaranteed defendant's faithful performance thereof, so as to make them primarily liable for its breach, defendant and such guarantors could be sued jointly for its breach of the contract.

9. Guaranty—Actions—Parties—Joint Action.—Where a contract and a guaranty are executed at the same time, a joint action for breach of the contract will lie against the principal and guarantor, though they should be separately sued if the contract and guaranty are not simultaneously executed.

10. Guaranty—Guarantor's Liability—Time of Accruing.—If a guaranty is absolute, the guarantor is bound upon the principal's default without further steps being taken, while if it is conditional, proof of the prinicpal's insolvency is also essential to bind the guarantor; and the guaranty for the faithful performance of a contract to deliver logs, made as a part of the original written contract, was an absolute guaranty, so that the guarantor's liability attached immediately upon the principal's breach.

11. Logs and Logging—Contract for Logs—Actions for Breach— Pleading—Sufficiency of Petition.—The petition alleged a

contract by which defendant agreed to sell and deliver to plaintiff's assignor all the merchantable white oak logs over a certain size to be cut from timber on a certain tract, defendant to deliver the logs to certain mill sets, sites for which plaintiff agreed to furnish, and that defendant was to be paid therefor at $9 per 1,000 feet, and that other defendants guaranteed defendant's faithful performance of the contract. The petition further alleged the due assignment of the contract by the other party thereto to plaintiff, plaintiff's performance thereof, so far as it was permitted to perform by defendant performing its part, plaintiff's willingness and ability to complete performance, and defendant's failure to perform by failing to furnish part of the logs it agreed to furnish, with allegations of general and particular damages. Held, that the petition stated a cause of action.

12. Pleading—Demurrer—Grounds.—Damages.—That the petition in an action for breach of contract set up an improper measure of damages was not ground for demurrer.

13. Damages—Special Damages.—Where special circumstances showing that the breach of the contract will involve special damages are communicated to a party when the contract is made, such special damages may be recovered, though not the result of an ordinary breach.

14. Damages—Breach of Contract—Loss of Profits.—A contract by which defendant sold and agreed to deliver logs to plaintiff was made with reference to. contemplated contracts thereafter to be made by plaintiff to sell to third parties, at certain agreed prices, the staves which they expected to manufacture from the logs purchased, and such contracts were known to defendant when it contracted to deliver the logs, and by his failure to do so plaintiff was compelled to violate the contracts made with such third parties, resulting in loss of profits which they would have made by performance thereof. Held, in an action for breach of defendant's contract, that plaintiff could recover the profits he would have made upon his contract with third parties, in contemplation of which his contract with defendant was executed.

W. O. BRADLEY, HUGH RIDDELL and GOURLEY REDWINE & GOURLEY for appellants.

ROBT. H. WINN and LEWIS APPERSON for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellants, Pulaski Stave Company, Incorporated, and Oscar Tate, G. W. Tate, W. A. Nunnelly, and J. C. Parker, partners, doing business under the firm name, Pulaski Stave Company, before that company became incorporated, brought this action in the court below for the benefit of the Pulaski Stave Company, Incorporated, against the appellees, Miller's Creek Lumber Company, Incorporated, and W. C. Taylor, Bruce C. Taylor, J. Will Clay, and M. C. Clay, to recover damages for the alleged violation by the latter of the following contract:

"Memoranda of agreement, made this 22d day of March, 1905, by and between the Miller's Creek Lumber Company, composed of W. C. Taylor and Bruce C. Taylor, of Menifee county, Kentucky, and J. W. Clay and M. C. Clay, of Montgomery county, Kentucky, parties of the first part, and G. W. Tate, of Somerset, Kentucky, party of the second part, witnesseth: That the said first party, for and in consideration of the covenants hereinafter expressed and the payments to be made as herein stated, sell and agree to deliver as hereinafter stated to the second party all of the sound, merchantable, white oak sawlogs 14 inches and up in diameter, to be cut from the timber now standing on the tract of land of said first party purchased by and through them from the Beattyville Mineral Timber Company, as per deed of the 15th of March, 1905, located on Big Sinking creek, in Lee county, and lying east of the Flahaven line, containing 2,243 acres, more or less. And it is understood that all of the sawlogs of the above description contained in the above-described boundary of land are to be cut and applied on this contract as hereinafter stated. The above logs to be cut from 9 to 16 feet as may be agreed on

from time to time, excepting that all common and better white oak butt cut logs 22 inches and up in diameter are to be cut 12 feet, or 10 and 12 feet.

"Delivery.—The said first party hereby agrees to deliver the aforesaid logs to one of the two different mill sets, the location of which is to be agreed on hereafter; and the said first party to furnish the mill sites for the said two sets.

"Measurement.—All logs to be measured by Doyle's rule, from the small end and narrow way, for the sound timber and lumber they may contain, and, unless otherwise agreed hereafter, each party is to have its scaler to make measurement of all logs as they are to be delivered by the second party, which joint measurement and inspection is to be final.

"Prices.—The said second party agrees to pay the first party as full consideration therefor at the price of $9.00 per M ft.

"Terms.—Being cash payments to be made on or before the 15th day of each month for all logs taken up during the previous month.

"It is hereby agreed that the said party is to make a good and sufficient bond for the performance of this contract. It being further agreed between the parties of this contract that the second party will not operate, or in any manner interest himself, directly or indirectly, in a store on or near the lands of the first party, or upon the lands of the Simcoe Land Company, the said party to have the exclusive right and privilege. Executed in duplicate, this 22d day of March, 1905.

"MILLER'S CREEK LUMBER COMPANY,
By W. C. TAYLOR, Treas.
"G. W. TATE.
"Witness: G. A. ROY.
"E. W. WATTS."

The said guaranty is as follows:

"We, the undersigned, personally guarantee the faithful performance of the above contract, and further guarantee that the cutting and delivering of logs shall begin on or before June 1, 1905.

"W. C. TAYLOR.
"BRUCE C. TAYLOR.
"M. C. CLAY.
"J. WILL CLAY."

It appears from the averments of the petition that after the above contract was made G. W. Tate became a partner of W. A. Nunnelly in the firm of Tate & Nunnelly, and that for a valuable consideration Tate assigned the above contract and his rights thereunder to that firm; that in 1905 Oscar Tate and J. C. Parker became members of the firm of Tate & Nunnelly, the name of which was changed to that of the Pulaski Stave Company, following which G. W. Tate and the firm of Tate & Nunnelly assigned and transferred the contract in question, and the mill, machinery, and other property of the firm, to the Pulaski Stave Company. On January 1, 1906, the Pulaski Stave Company, by proper articles executed and recorded as required by law, became duly incorporated, and in so doing retained as its corporate name the name it had borne as a partnership. To the corporation thus created the contract made by G. W. Tate with the Miller's Creek Lumber Company, and all rights thereunder of the Pulaski Stave Company and the partners composing same, together with all property owned by the firm, was assigned and conveyed. It is averred in the petition that G. W. Tate executed a bond with approved security for the faithful performance of each duty and undertaking assumed by him in the contract with the appellee Miller's Creek Lumber Company, and that he and his

several assignees did in fact comply with every such duty and obligation, the petition setting forth the several particulars in which this was done, and that Tate by appellee's direction located the "mill set" at Bald Rock fork of Miller's creek, in Lee county, in which county the contract was to be performed; the site so selected being wholly of appellee's choosing, and the only one provided for by the contract.

The petition then proceeds to charge that the appellee Miller's Creek Lumber Company violated the contract in question in the following particulars: (1) That it delivered to appellants at their mill site only 600,000 feet of the 4,000,000 feet of logs on the land described in the contract; that the logs so delivered were of a quantity and value inferior to those called for in the contract, and also to the other logs remaining on the land, and were not worth exceeding $7 per M feet, which was $2 per M less in value than allowed by the contract; but the logs thus received appellants paid for at $9 per M feet, expecting to be reimbursed, and being assured by appellee Miller's Creek Lumber Company that they would be reimbursed, for the loss of $2 per M feet, in settlements to be made for other logs of the size and quality required by the contract, and which by its terms appellee obligated itself to deliver, but did not in fact deliver; that by the alleged overpayment to appellee of $2 per M feet upon the inferior logs thus delivered them by it, and for which, it was further alleged, the latter agreed to account in settlements to be made for other and better logs to be thereafter delivered, but were never delivered, appellants claimed to have sustained a loss and been damaged in the sum of $1,200, for which judgment was prayed in the petition. (2) It was in substance further alleged in

the petition that, when G. W. Tate made with the
appellee Miller's Creek Lumber Company the con-
tract in question, the latter and its guarantors, the
appellees W. C. Taylor, Bruce C. Taylor, M. C. Clay,
and J. Will Clay, knew that Tate was a manufacturer
of staves, and that the timber they therein agreed
to furnish him was to be made into staves, and also
knew that his assignees, the Tate & Nunnelly Stave
Company and the appellant Pulaski Stave Company,
were engaged in the same business, and that they
were to manufacture into staves the timber appellees
were required by the contract to furnish, yet appel-
lees in violation of their contract failed to deliver
at the "mill site" of the appellant Pulaski  Stave
Company at least 3,400,000 feet of the logs they had
contracted to deliver, informed it they would not do
so, and in fact sold the logs to other parties; that
the logs appellees thus failed and refused to deliver,
the appellant Pulaski Stave Company, its assignors,
Tate & Nunnelly Stave Company and G. W. Tate,
had, at the time of the making of the contract be-
tween the latter and appellees, contracted to make
into staves and deliver to other parties at the price
of $54 per thousand; that appellants' assignors, Tate
& Nunnelly and G. W. Tate, entered into these con-
tracts, and were induced to do so, by reason of their
contract with appellees, and that the latter, when they
contracted with appellants' assignors to furnish them
the logs mentioned, knew that they had contracted to
make them into staves and deliver them to other per-
sons.   (3) It was also alleged that the 3,400,000 feet
of logs appellees failed to deliver appellant, as they
had contracted to do, would have  made  1,500,000
staves, and upon these at $54 per thousand, the price
at which appellant had contracted them to other par-

ties, it would have made a profit of $16 per thousand, or $24,000, and that it lost and was damaged in that amount by the failure of appellees to comply with their contract, and for this amount ($24,000) appellants likewise prayed judgment. (4) It was also alleged that, owing to the failure of appellees to deliver to appellant the logs they undertook by their contract to furnish it, the latter was compelled to obtain, and did obtain, for the parties to whom it contracted the staves it expected 'to make from appellees' logs, other logs out of which to make the staves, and this after great trouble and expense it only partially succeeded in doing, and that in this way it was compelled to and did incur additional expense to the amount of $——, and this sum, it was alleged, it lost by appellees' violation of the contract in question. (5) By further averments an additional claim for damages amounting to $3,600 was made in the petition; that is, it was therein charged that appellant's assignor Tate simultaneously with the making of the contract with appellee Miller's Creek Lumber Company, sold and agreed to deliver to the Roy Lumber Company, of Nicholasville, "all the common and better butt cut white oak logs 22 inches and over in diameter," which he (Tate) would receive under the contract with appellee Miller's Creek Lumber Company, from which contract he would have realized a profit of $9 per thousand feet, or the full sum of $3,600, and that this contract passed with the assignment of the Miller's Creek Lumber Company to appellant Pulaski Stave Company, but that the failure of the appellee Miller's Creek Lumber Company to comply with its contract prevented appellant from complying with the contract made by Tate with the Roy Lumber Company, and appellant was there-

by damaged in the sum of $3,600, for which judgment was asked.

With respect to the contract made by Tate with the Roy Lumber Company, it was further averred in the petition that it was made solely with reference to and because of the contract with the appellee Miller's Creek Lumber Company, and but for same would not have been made, and that the latter was fully advised of that fact. We have not referred to another claim of damages made in the petition, viz., that of $1,500 for labor and expense incurred by appellant in moving and setting up its mill at the Bald Rock fork. It was not entitled to recover this item, and also, by way of damages, the profits that would have been made by it from the contract with appellee Miller's Creek Lumber Company, had the latter complied with its terms. At any rate it is unnecessary to consider this claim, as it was on appellee's motion stricken from the petition by the circuit court, to which ruling no exception seems to have been taken by appellant. Appellees' motion to strike also went to other parts of the petition as to other items of damages claimed; but, except as to the item of $1,500 referred to, it was overruled, as was also a motion then made by appellees to require appellant to elect whether it would prosecute the action as to the appellee Miller's Creek Lumber Company, or the individual appellees, as guarantors.

Following the action of the court upon these motions, appellees filed answers to which appellants filed a reply. At the succeeding term of the court appellants filed an amended petition, in which it was in substance, alleged that the individuals whose names appear to the guaranty at the foot of the contract made by G. W. Tate with the appellee Miller's

Creek Lumber Company, were the same and only
stockholders, officers, and persons who then, and at
the date of the contract, constituted the appellee cor-
poration; that after the contract was made the ap-
pellee Miller's Creek Lumber Company delivered
some of the logs to be furnished under the contract
to G. W. Tate, and by him was paid therefor; that
after the assignment of the contract and guaranty by
Tate to the Tate & Nunnelly Stave Company, appel-
lee Miller's Creek Lumber Company delivered some
of the logs to that company and received payment
from it therefor, and after the assignment of the con-
tract and guaranty by the Tate & Nunnelly Stave
Company to the Pulaski Stave Company appellee de-
livered to that company some of the logs for which
it was paid, and that still later, and following the
incorporation of the Pulaski Stave Company, another
lot of the logs was delivered to it by appellee, and
for these it paid appellee; that appellee had notice
of the several assignments made of the contract and
guaranty, and by the several deliveries of logs made
to each of the assignees, and receiving payment there-
for from them, it recognized and consented to such
assignments, and was and is estopped to deny their
validity.

This amendment also set out with greater particu-
larity the contract between G. W. Tate, appellant's
assignor, and the Roy Lumber Company as to the
sale to that company of "butt cut white oak logs, 22
inches and over in diameter," to be delivered to it by
appellee Miller's Creek Lumber Company out of the
logs it was to furnish under its contract with Tate;
that the contract between Tate and the Roy Lumber
Company was consented to by appellee, and that it
delivered for G. W. Tate, the Tate & Nunnelly Stave

Company, and the appellant Pulaski Stave Company, to the Roy Lumber Company, 65,000 feet of the required logs, but failed to deliver to that company at least 400,000 feet of such logs, for which, at the specified prices, appellant would have been paid by the Roy Lumber Company, over and above what it would have been required to pay appellee Miller's Creek Lumber Company therefor, $3,600, the whole of which sum it lost by appellee's failure to carry out its contract.

The same amendment corrected certain alleged errors in the original petition, by alleging that at the date of the contract between G. W. Tate and appellee Miller's Creek Lumber Company the former had in writing contracted to good and solvent parties 550,000 staves at $54 per thousand, and that following the incorporation of the appellant Pulaski Stave Company it contracted to good and solvent parties 500,000 staves at $54 per thousand, and later made a contract with another equally good and solvent party to furnish him all the staves it could get at market prices prevailing when delivered; that, if appellee had complied with its contract, appellant would within two years have sold under its contracts mentioned all the staves it could have made from the logs appellees' contract required it to deliver it at $65 per thousand; that of the 550,000 staves contracted to be sold by G. W. Tate, of which appellant, by the assignment to it of appellee's contract, became the beneficiary appellee only delivered logs enough for appellant to make 180,000 staves; and that if appellant had been furnished by appellee the logs for the remaining 370,000, required to complete the 550,000 stave contract, appellant would have made on the whole $16 per thousand, or $5,920, but that by ap-

pellee's failure to comply with its contract appellant was damaged in that amount. In the amended petition it was alleged that a profit would have been made on the contract for 500,000 staves of $18 per thousand, or $9,000, and on the remaining staves, not included in the two contracts named, for which, it was alleged, the market price would have been received, a profit of $27 per thousand, or $17,550, would have been made.

After the amended petition was filed appellees renewed their motion to require appellant to elect, and, the motion being sustained, appellant excepted to the ruling of the court, and elected to prosecute the action against the appellee Miller's Creek Lumber Company, whereupon it was dismissed by the court as to the other appellees, and to this ruling appellant likewise excepted. The appellee Miller's Creek Lumber Company then filed a demurrer to the petition as amended, which the court sustained. An exception was taken by appellant to this ruling, and it thereupon filed a second amended petition, more specifically setting forth the several assignments of the contract between G. W. Tate and the appellee Miller's Creek Lumber Company, whereby the appellant Pulaski Stave Company became the ultimate owner and beneficiary thereof, appellees' procurement of and consent to each assignment, and its partial compliance with the contract by a delivery of some of the logs to each of the assignees, and receiving of them payment therefor. The last amendment also set out with greater particularity the execution by G. W. Tate to appellee, and its acceptance, of the bond with sufficient security required of him by the contract with appellee for the faithful performance of his part thereof, and alleged his and his several

assignees' compliance with the provisions of the contract, and his and their ability and readiness to pay for all logs the contract required appellee to deliver them, and that after appellee's failure to deliver them the greater part of the logs it contracted to deliver, the appellant Pulaski Stave Company and its several assignors made diligent effort to get other logs of like character from other sources with which to fill their contracts, but were unable to do so, and that the rates at which they had sold and could have sold the staves they would have made of the logs appellee contracted to furnish them were the regular market prices for such staves at that time.

After the filing of the second amended petition, appellee Miller's Creek Lumber Company insisted upon its demurrer to the petition as finally amended, and the demurrer was again sustained by the court. Appellants excepted to the ruling, and refused to plead further, whereupon judgment was entered dismissing the action at their cost, from which judgment and the several rulings sustaining the motion to elect and demurrer, this appeal is prosecuted.

We have set forth with unusual minuteness the many facts alleged in the petition and amendments as constituting appellant's several causes of action, in order that the questions of law presented for review may the better be understood. Our first conclusion is that the circuit court erred in sustaining the motion to elect. The contract and guaranty were clearly assignable. Being a mere logging contract of the ordinary kind, no reason is perceived why it could not be as well performed by one person or corporation as another; and it seems to be well settled that a contract is generally assignable, unless forbidden by public policy or the contract itself, or its provi-

vol. 138—25

sions are such as to show that one of the parties reposes a personal confidence in the other, which he would have been unwilling to repose in any other person. Am. Bonding & Trust Co. v. Baltimore & O. S. W. R. R. Co., 124 Fed. 866, 60 C. C. A. 52. It is apparent that appellee Miller's Creek Lumber Company could as well have delivered to the appellant Pulaski Stave Company the logs the contract required it to furnish as to have delivered them to G. W. Tate with whom it made the contract. The assignment of the contract to the Pulaski Stave Company by the Tate & Nunnelly Stave Company, and its assignment to that company by Tate, in no way altered its terms or changed the manner or place of its performance. Neither assignment altered the undertaking of the persons whose guaranty appears upon the contract, or imposed upon them any additional risk or burden. Besides, G. W. Tate remained bound upon the bond he executed as required by the contract for its faithful performance by the Pulaski Stave Company, and became and is an officer of and one of the principal stockholders in that corporation, and as such continued a beneficiary of the contract in question. Indeed, his attitude is that of a contracting party who called on and enlisted the services of others, viz., his assignees, to aid him in performing the contract.

But if it were conceded that we are mistaken in our construction of the contract and as to its assignability, upon yet another ground we would be compelled to hold that the liability of the appellees thereon was unaffected by its assignment; for it is averred in the petition, as amended, that the appellees, both the Miller's Creek Lumber Company and its guarantors, not only knew of the assignments of

the contract and guaranty, but that they consented thereto at the time they were made, and, in addition, recognized and ratified them by delivering to the assignee under each assignment a part of the logs the contract required them to furnish, for which they were paid. If this be true, and its truth must be accepted upon demurrer, appellees are estopped to deny the validity of the assignments of the contract and guaranty, and also to deny their liability for such breaches, if any, of the contract as the appellee Miller's Creek Lumber Company may have committed. It has been held that even an expressed provision prohibiting the assignment of a contract may be waived by the consent of the parties (Brewster v. City of Hornellsville, 35 App. Div. 161, 54 N. Y. Supp. 904), and a fortiori may it be said that the nonassignability of a contract, arising by inference from a relation of personal confidence, may be waived by the consent of the parties (Weatherhogg v. Board of Com'rs, 158 Ind. 14, 62 N. E. 477; Houssels v. Jacobs, 178 Mo. 579, 77 S. W. 857; Wilson v. Imperial Fertilizer Co., 67 S. C. 467, 46 S. E. 279; Bancroft v. Scribner, 72 Fed. 988, 21 C. C. A. 352.

The case of Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246, cited by appellees as sustaining the contention that the contract in question was nonassignable, does not in our opinion conflict with the conclusion we have expressed. While it was held in that case that the contract, which was one to deliver ore, was not assignable because involving personal confidence, it appears that it was assigned by the beneficiary without the consent of the other contracting party, and that as soon as the latter received notice of the assignment it refused to deliver any ore

to the assignee.   Under these circumstances the Supreme Court very properly, as we think, held that it could not be compelled to do so.   Other cases relied on by appellees may, in our opinion, be distinguished from the instant case on the same or similar grounds.   Even if of opinion that the contract before us were one involving personal confidence, and, therefore, not assignable without the consent of the appellees, nevertheless, in view of the averments of the petition, as amended, we should have to hold that the question of whether appellees waived its nonassignability was one that should have been submitted to a jury.

Appellees' contention that suit on the contract and guaranty could not be joined in the same action rests upon the theory that it was necessary for the appellants to first sue on the contract, apart from the guaranty, and establish a breach thereof, in which event, and upon a failure to collect of the appellee Miller's Creek Lumber Company by execution, if not otherwise paid, the damages, if any, recovered for the breach of the contract, suit might then be maintained upon the guaranty to fix the liability of the guarantors therefor.   This view of the matter is not tenable.   The attitude of the guarantors to the contract under consideration is not that of assignors, but more nearly akin to that of sureties; for the guaranty is a part of the contract, and therefore the guarantors are primarily liable for its breach.   The action is not one to enforce the contract, as in the case of Marshall v. Peck, 1 Dana, 610, relied on by appellees, but to recover of the appellee corporation and its sponsors, the guarantors, damages for its failure to perform it, and not only so, but also for the corporation's total inability to perform it; the latter aided

by the guarantors who are its stockholders and offi-
cers, having sold to other parties all the timber it
contracted to appellants.  Being parties to the con-
tract, as well as the guaranty, the guarantors are
jointly liable with the appellee Miller's Creek Lum-
ber Company to appellant Pulaski Stave Company
for at least some part of the damages sued for, if,
as alleged in the petition, there was a breach of the
contract by the appellee Miller's Creek Lumber
Company.

The right to sue the appellees jointly is conferred
by sections 24, 26, 27, Civ. Code Prac. There is a
distinction between a guaranty executed simultane-
ously with the principal contract and one subsequent-
ly made and based upon a separate consideration
and where the contract and guaranty are executed
simultaneously a joint action will be permitted
against the principal and guarantor; but it is other-
wise if they are not simultaneously executed, for in
such case the principal and guarantor should be
separately sued.  20 Cyc. 1484; Tucker v. Shiner, 24
Iowa, 334; Gale v. Van Arman, 18 Ohio, 336. We are
further told in 20 Cyc. 1450, that there is also a dis-
tinction between an absolute and conditional guaran-
ty.  In the first the guarantor is bound immediately
upon the failure of the principal to perform the con-
tract, without further steps being taken; while in
the case of a conditional guaranty proof of the in-
solvency of the principal is necessary.  Manifestly
the guaranty in the case before us is an absolute guar-
anty, and the liability of the guarantors attached
immediately upon the principal's breach of the con-
tract.

We are further of opinion that the circuit court
erred in sustaining the demurrer. The petition, as

amended, states a cause of action.   Its averments set
up the contract in such terms as conform to the writ-
ing containing it, and the writing is filed with and
made a part of the petition.  Appellants' perform-
ance thereof, as far as it is claimed appellees' acts
permitted such performance, and their ability and
willingness to make complete performance, were duly
alleged, as was appellees' failure to perform the con-
tract, the several particulars in which it so failed,
and the consequent injury and damages resulting
to the appellant Pulaski Stave Company therefrom.
It is, however, insisted for appellees that the petition,
as amended, alleges an improper measure of dam-
ages, and for this reason, if for no other, the de-
murrer was properly sustained.

Appellees' counsel are in error in this contention.
Even though an improper measure of damages were
relied on, that fact could not justify the  court in
sustaining the demurrer.  It must not be overlooked
that appellants are claiming special damages for cer-
tain violations of the contract; that is, it is claimed
that when the contract in question was made it was
entered into with reference to and in contemplation
of· other contracts then and thereafter made by ap-
pellant, whereby they were to sell and deliver at cer-
tain agreed and market prices to other parties the
staves they expected to manufacture of the timber
purchased of appellees, that these several contracts
were known to appellees when they contracted with
appellant, and that appellees, in violating their con-
tract with appellants, compelled them to violate the
contracts they had made with others, thereby causing
them to lose the profits they would have made by per-
forming such contracts.  As said in 13 Cyc. 34, 35,
quoting from the leading case of Hadley v.  Baxen-

dale, 9 Exch. 541.: ''Where special circumstances
have been communicated to a party, at the time of
the making of the contract, which go to show that.the
breach will involve special damages, such damages
may·be recovered, although not the result of an or-
dinary breach.  When a contract is  made  under
special circumstances, and those circumstances are
communicated to one of the contracting parties by
the other, the damages resulting from the breach of
the contract which they would reasonably contem-
plate are the amount of the injury which would ordi-
narily flow from a breach under those special cir-
cumstances.''  Again, on page 35 of the same volume,
it is said:  ''When a party makes a contract, and
at the time notifies the defendant that such contract
is made with reference to a subcontract already en-
tered into or contemplated, upon a breach he will not
be confined to ordinary damages, but may recover
such damages as necessarily result from the breach.''
Feland v. Berry, 130 Ky. 328, 113 S. W. 425; Eliza-
bethtown, etc., R. R. Co. v. Pottinger, 10 Bush, 185;
Bluegrass Cordage Co. v. Luthy, 98 Ky. 588, 33 S. W.
835; I. C. R. R. Co. v. Nelson, 97 S. W. 757, 30 Ky.
Law Rep. 114.  Perhaps the latest reaffirmance by
this court of the rule in question is found in Ameri-
can Bridge Co. v. Glenmore Distilleries Co., 107 S.
W. 279, 32 Ky. Law Rep. 873, where, after  citing
many authorities, from the earliest down, it is said:
''And this rule, so far as we know, has never been
successfully questioned .since.''

Under the facts alleged in the petition, the plea
of special damages was proper; but whether appel-.
lants should be permitted to recover the special dam-
ages claimed, or ordinary damages as for an ordinary
breach of the contract, is a matter that must be de-
termined upon a trial of the case in the court below,

and it will be the duty of that court to then instruct the jury as to the measure of damages after determining from the proof what the measure should be. Of course, the question whether the appellant Pulaski Stave Company should or might have minimized its damages by purchasing, after appellee violated its contract, other logs out of which to make staves for the other parties to whom it had contracted them, is also one to be determined by the jury from the proof, under proper instructions from the court.

For the reasons indicated, the judgment is reversed, and cause remanded, with directions to the lower court to overrule the motion to elect and the demurrer to the petition, that the case may be tried in conformity to the opinion.