CENTRAL ADJUSTMENT BUREAU, INC., Appellant,

v.

INGRAM ASSOCIATES, INC., H. Preston Ingram, Kathleen Garrison and David Powers, Appellees.

INGRAM ASSOCIATES, INC., H. Preston Ingram, Kathleen Garrison, David Powers, and Anthony Schweitzer, Cross-Appellants,

v.

CENTRAL ADJUSTMENT BUREAU, INC., Cross-Appellee.

Court of Appeals of Kentucky.

Sept. 4, 1981.

Discretionary Review Denied Nov. 17, 1981.

R. Van Young, Eric L. Ison, Sara E. Noyes, Louisville, for appellant-cross-appellee.

Rob L. Smith, Stephen S. Johnson, Louisville, for appellees-cross-appellants.

Before GANT, GUDGEL and HOWERTON, JJ.

GUDGEL, Judge.

This is an appeal and cross-appeal from a judgment entered by the Jefferson Circuit Court. The principal issue is whether covenants not to compete, signed by three employees of appellant subsequent to the date of their employment, are valid and enforceable. The court below adjudged that the covenants are unenforceable because they are not supported by consideration.

Appellant, Central Adjustment Bureau, Inc. (CAB) is a national company which provides various collection services to clients. The company has offices in twenty-five cities. Although its business is highly competitive, CAB has been able to acquire approximately 30% of the collection market, and has pioneered the use of computer accounting in the industry. In the conduct of its business, CAB makes use of promotional material and acquires extensive information about its clients. Much of its success depends upon satisfactory personal contact between its sales and collection employees and its clients, and those employees have free access CAB's business records and confidential files.

Apparently concerned about the adverse impact which direct competition from former employees might have, CAB elected about eight or nine years after it commenced operations, to require its sales and collection employees to execute covenants not to compete. Under the terms of the covenant, the employee agrees that during the term of his employment with CAB, and for a period of two years thereafter, he will not compete with the company within the United States, either directly or indirectly (1) by being employed by, or owning a proprietary interest in, a business entity in competition with CAB, (2) by divulging or making use of information about CAB's business which he has acquired, or (3) by contacting clients who had been customers of the company while he was employed by CAB.

Appellees, H. Preston Ingram, Kathleen Garrison, and David Powers, each executed a covenant as described subsequent to their employment by CAB. Ingram was employed on March 1, 1971, and the covenant he signed was acknowledged before a notary public on March 22, 1971. Garrison was employed on September 8, 1975, and the covenant she signed was acknowledged on November 12, 1975. Powers was employed on April 1, 1975, and the covenant he signed was acknowledged on May 15, 1975. Ingram voluntarily resigned from his employment with CAB on February 22, 1979. Garrison and Powers did likewise on April 1, 1979. It is undisputed that these employees made plans and took actions prior to their resignation to acquire a proprietary interest in a collection business which was intended to operate in direct competition with CAB. In fact, the business, appellee Ingram Associates, Inc., was organized and had two offices operating in Louisville and Nashville by April 1979, each of which was staffed by former CAB employees.

CAB filed this action on April 4, 1979. It sought an injunction prohibiting Ingram, Garrison, Powers, and cross-appellant, Anthony Schweitzer, from operating a business in competition with CAB in violation of the covenants not to compete each had signed. A restraining order, and thereafter, a temporary injunction, were issued. A trial on the merits of CAB's claim for permanent injunctive relief followed. Findings were rendered on April 14, 1980. The court found that the covenants signed by Ingram, Garrison, and Powers are unenforceable because they were executed subsequent to their employment by CAB, and therefore, are not supported by consideration. However, the court found that the covenant not to compete signed by cross-appellant Schweitzer was valid and enforceable because it was signed simultaneously with his employment. The court also adjudged that all four former employees breached their fiduciary relationship to CAB for which conduct they must respond in damages, but reserved the amount of damages recoverable for future adjudication. The judgment also failed to specifically grant or deny any of the injunctive relief which had been demanded by CAB. This appeal and cross-appeal followed.

■ We are immediately faced with a procedural question of whether any portion of the court's judgment is final and appealable. Neither party has raised this issue. Nevertheless, this Court is required to do so. *Hook v. Hook*, Ky., 563 S.W.2d 716 (1978).

CAB's complaint asked for injunctive relief against (1) appellees' continued violation of their covenants not to compete; (2)

their enticement or interference with CAB's employees, and (3) their solicitation and use of confidential and/or proprietary business information of CAB. Additionally, CAB sought an order requiring that they turn over to CAB all customer lists and other written information in their possession related to the business and affairs of CAB. CAB also sought money damages for a breach of appellees' fiduciary relationship to the company.

It is evident that CAB's complaint asserted several distinct and separate claims for relief. However, the only claim that was finally adjudicated by the court's judgment was the claim for injunctive relief to prohibit appellees, Ingram, Garrison, and Powers from continuing to violate their covenants not to compete. We reach this conclusion only because such an adjudication was implicit in the court's adjudication that those covenants were invalid and unenforceable.

Aside from this adjudication, we have determined that the remainder of the judgment appealed from is interlocutory and not reviewable by this Court. Therefore, we dismiss the portions of the direct appeal and the cross-appeal which contend that the court erred (1) by failing to grant CAB injunctive relief prohibiting appellees from continuing to breach their fiduciary relationship, (2) by finding that the covenant not to compete executed by cross-appellant Schweitzer, is valid and enforceable, and (3) by finding that all four former employees breached their fiduciary relationship to CAB and must respond in damages. This action on our part is necessitated because the court made no final adjudications in its judgment with respect to these contentions.

While CAB sought equitable relief with respect to appellees' alleged breach of their fiduciary relationship, the court's judgment neither granted nor denied such relief. Similarly, while the court found that the covenant not to compete signed by Schweitzer is valid and enforceable, the court's judgment fails to grant any equitable relief enforcing the covenant. Likewise, although the court's judgment adjudged that all four

employees breached their fiduciary relationship to CAB, it specifically reserved the issue of damages recoverable on that claim for future adjudication. Thus, except for that portion of the judgment which adjudges that the covenants not to compete signed by appellees, Ingram, Garrison, and Powers, are invalid and unenforceable, we are not authorized to review any of the remaining adjudications made in the court's judgment. CR 54.01; CR 54.02; *Hook v. Hook, supra; Hale v. Deaton*, Ky., 528 S.W.2d 719 (1975).

Appellant contends that the court erred by finding that the covenants not to compete signed by Ingram, Garrison, and Powers are invalid for lack of consideration. We agree.

The basis for the court's finding was its belief that to confront an existing employee at will with such a covenant, and then to give him the choice of signing it or being fired amounts to duress and coercion. In such a situation, in the opinion of the trial court, the employer's willingness thereafter to continue to employ the employee is not sufficient consideration to support the covenant because mutuality of assent was lacking at the time it was signed.

Appellant argues that this finding failed to take into consideration certain facts and circumstances peculiar to this case. CAB points to the fact that the three covenants were signed by the employees as early as twenty-one days, and not later than sixty-five days, after they were employed. It also argues that the covenants were reasonable in time (2 years) and space (in light of the nationwide character of CAB's business) and reasonable because appellees were not prohibited from competing with CAB by forming or working for a local as distinguished from a national, collection business. Further, CAB argues that the covenant was reasonable because it imposed no restriction on appellees' ability to compete with CAB nationwide, provided they compete in areas of the collection business in which CAB is not engaged. Finally, CAB urges that since Ingram, Garrison, and Powers each received regular pay raises and promotions after they signed the covenants, and remained

employed by the company for different periods of from four to eight years, any lack of mutuality of assent which might have existed on the date they signed the covenants was not present on the date they voluntarily resigned.

As far as we are able to ascertain, the question presented is one of first impression in this jurisdiction. In making its finding, the trial court cited *Lareau v. O'Nan*, Ky., 355 S.W.2d 679 (1962); and *Crowell v. Woodruff*, Ky., 245 S.W.2d 447 (1951). These cases, however, are distinguishable on their facts. In the *Lareau* case, *supra*, the court merely emphasized that the defendant had signed the covenant at the time of his employment "free of any financial coercion." There was no issue in that case, however, as to whether the covenant lacked consideration because it was signed subsequent to the covenantor's employment.

Similarly, in the *Crowell* case, *supra*, while the court noted that the covenant possibly should be struck down for lack of consideration, it actually decided the case based on other factors not present in this case. Those were that the employee had worked for several years before he was asked to sign the covenant, his services were such that the employer could not derive any benefit from enforcement of the covenant, and the employee was fired only four and one-half months after he signed the covenant. None of these factors is present in the case at bar. In fact, just the opposite is true. All of these employees signed the covenant very shortly after they were employed, their services were such that a substantial benefit would accrue to CAB if the covenants were enforced, and they were not fired shortly thereafter, but rather, were continued in CAB's employment, receiving regular pay raises and promotions, until they voluntarily resigned some years later. Therefore, we agree with appellant that the *Crowell* case, *supra*, and the *Lareau* case, *supra*, are clearly distinguishable and neither supports the trial court's finding.

*Louisville Cycle & Supply Co., Inc. v. Baach*, Ky., 535 S.W.2d 230 (1976), cited by CAB in support of its position, is also distinguishable on its facts. In that case the court rejected the defendant's contention that his covenant not to compete which was signed *simultaneously* with an employment contract, but after he commenced working, was not enforceable for lack of consideration. Likewise, *Orion Broadcasting, Inc. v. Forsythe*, 477 F.Supp. 198 (W.D.Ky.1979), cited by CAB, is not in point.

In a nutshell, the issue in this case boils down to whether a covenant not to compete signed by an employee after the date of his employment is enforceable. We hold that it is provided the employer continues to employ the employee for an appreciable length of time after he signs the covenant, and the employee severs his relationship with his employer by voluntarily resigning. In such a situation, the employer has fulfilled an implied promise to continue the employee's employment and that promise is sufficient consideration to support enforcement of the employee's promise not to compete. We express no opinion, however, as to the result we would reach had CAB unilaterally and involuntarily terminated these individuals' employment. Our decision is not novel. In fact, it has support in several jurisdictions. *See, e.g., Thomas v. Costal Industrial Services, Inc.*, 214 Ga. 832, 108 S.E.2d 328 (1959).

Appellees cite some cases from other jurisdictions which hold that covenants not to compete executed subsequent to the date of employment are invalid. We find ourselves unpersuaded by these authorities. Appellees also cite this Court's decision in *Hammons v. Big Sandy Claims Services, Inc.*, Ky.App., 567 S.W.2d 313 (1978). In that case we said:

> [I]t has been held in Kentucky that an agreement in restraint of trade is reasonable if, on consideration and circumstances of the particular case, the restriction is such only as to afford fair protection to the interests of the covenantee and is not so large as to interfere with the public interests or impose undue hardship on the party restricted. *Ceresia v. Mitchell*, Ky., 242 S.W.2d 359 (1951).

Contrary to appellees' argument, we believe the proposition enunciated in the *Hammons* case supports our decision. CAB's business is highly specialized and competitive, and since clients sign no written contract they are free to change collectors almost overnight. Thus, covenants not to compete are about the only protection available to CAB to prevent employees from resigning and attempting to pirate away their clients after CAB has expended considerable time, effort, and money in training those employees in the collection business. Absent the training afforded by CAB, its employees would hardly be in a position to compete. Therefore, we are satisfied that CAB's covenants not to compete are a reasonable restriction affording CAB fair protection for its legitimate business interests.

Likewise, we are not persuaded that the covenants adversely impact on the public interest or impose undue hardship on CAB's employees. There are apparently numerous collection agencies, both national and local, capable and willing to provide collection services needed by the public, and the mere fact that former employees of CAB may not be available to work in the industry for two years has no appreciable adverse impact on the public interest. Nor do the covenants cause any undue hardship for former employees of CAB because they are free to seek employment with local collection agencies, as well as nationwide ones provided the latter agencies do not collect the same type of accounts CAB collects.

Even if it is true that appellees were forced to sign the covenants not to compete under duress, or as a result of coercion, the fact remains that they signed them very shortly after they were employed and CAB continued to employ them for years thereafter. They were given raises and promotions by CAB during this period, and acquired specialized knowledge, training, and expertise in the collection business which they might not have otherwise acquired. Therefore, as we view the matter, any lack of mutuality of assent which may have existed on the date the covenants were signed was clearly not lacking on the date appellees voluntarily resigned their employment and began competing with CAB. In addition, we emphasize that at the time the covenants were signed appellees had only been employed by CAB for a short time, and had no appreciable previous experience in the collection business. Had they strenuously objected to signing the covenants, they were free to resign and seek a career in the business with a different employer. By signing the covenants and continuing their employment with CAB, they must be deemed to have assented to be bound by them. They cannot now be heard to deny their validity.

The portion of the judgment appealed from which adjudges that the covenants not to compete signed by Ingram, Garrison, and Powers, are invalid and unenforceable is reversed and remanded for further proceedings consistent with this opinion. The remainder of the direct appeal and the cross-appeal is dismissed.

All concur.