*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0143P (6th Cir.)
File Name:  00a0143p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MANAGED HEALTH CARE
ASSOCIATES, INC., MHCA
ACQUISITION INC., d/b/a
MHA/MedEcon,
     *Plaintiffs-Appellants,*

     *v.*

RONALD  KETHAN, EAST
TEXAS REGIONAL
COOPERATIVE, d/b/a First
Choice Cooperative,
     *Defendants-Appellees.*



No. 99-5444

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00066—Jennifer B. Coffman, District Judge.

Argued:  March 10, 2000

Decided and Filed:  April 21, 2000

Before:  WELLFORD, SILER, and GILMAN, Circuit
Judges.

1

———————————

**COUNSEL**

**ARGUED:**    William J. Hunter, Jr., MIDDLETON & REUTLINGER, Louisville, Kentucky, for Appellants. James D. Cockrum, BROWN, TODD & HEYBURN, Louisville, Kentucky, for Appellees. **ON BRIEF:** William J. Hunter, Jr., Thomas P. O'Brien, III, Dennis D. Murrell, MIDDLETON & REUTLINGER, Louisville, Kentucky, Daniel L. Abrams, Louis M. Solomon, SWIDLER, BERLIN, SHEREFF & FRIEDMAN, New York, New York, for Appellants. James D. Cockrum, Charles M. Pritchett, Jr., BROWN, TODD & HEYBURN, Louisville, Kentucky, R. Gregg Hovious, TACHAU, MADDOX, HOVIOUS & DICKENS, Louisville, Kentucky, for Appellees.

    GILMAN, J., delivered the opinion of the court, in which SILER, J., joined. WELLFORD, J. (pp.14-15), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

    RONALD LEE GILMAN, Circuit Judge. Managed Health Care Associates, Inc. and MHCA Acquisition, Inc., d/b/a MHA/MedEcon (collectively MHA), commenced an action in state court against Ronald Kethan (Kethan) and East Texas Regional Cooperative, d/b/a First Choice Cooperative (First Choice). MHA sought a preliminary injunction to prevent Kethan from violating the noncompetition clause that he had signed when employed by MedEcon Services, Inc. (MedEcon), MHA's predecessor. After Kethan and First Choice removed the case to federal court based on diversity of citizenship, the district court held that the noncompetition agreement was enforceable only by MedEcon, and that it was not assignable by MedEcon to MHA without Kethan's consent. It therefore denied MHA's request for a preliminary

issue (and certainly not to the issue I would certify to that Court). Pertinent to the issue was the unpublished decisions of the Kentucky trial court and the Court of Appeals which noted no controlling Kentucky authority on the question of necessity of consent to a purported assignment by the employee.

    I dissent, accordingly, in favor of certification under the circumstances.

———————————

**DISSENT**

———————————

HARRY W. WELLFORD, Circuit Judge, dissenting. This is a difficult case and my brothers would reverse and remand to the district court for further proceedings. I respectfully differ. I am persuaded that the best course, in light of the uncertainties that exist in this area of the law in Kentucky, is to certify this legal question to the Kentucky Supreme Court:

Is the non-competition agreement in this case between MedEcon and its employee, Kethan, assignable to the plaintiff company (a third party), in the absence of Kethan's consent?

I do not agree with the majority opinion that the district court "held that non-competition clauses are not assignable in Kentucky." Rather, the essence of the district judge's holding was this:

[T]he non-compete agreement and the confidentiality clause applied only to MedEcon and . . ., under *W. R. Grace*, they were not assignable to MedEcon to MHA *without the employee's consent*. Reinforcing this notion is the Kethan/MedEcon agreement's inclusion of a requirement that all contract modifications must be written. No such writing occurred here; thus, MedEcon did not assign the covenant to compete or confidentiality clause to MHA.

(emphasis added.)

The majority holds that "a non-competition clause is assignable in Kentucky." It adds that "[t]here is only one case in Kentucky that addresses this issue," *Choate v. Koorsen Protective Servs., Inc.*, 929 S.W.2d 184 (Ky. 1996). We are in agreement that this particular Kentucky Supreme Court decision did *not* determine the answer to the assignability

injunction and dissolved the temporary restraining order that MHA had obtained in state court. For the reasons set forth below, we **REVERSE** the decision of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.   Procedural history

On January 5, 1999, MHA commenced an action against Kethan and First Choice in the Circuit Court of Jefferson County, Kentucky. MHA sought and obtained a restraining order, enjoining Kethan from violating the noncompetition clause that was part of his employment agreement with MedEcon.

On February 2, 1999, Kethan and First Choice removed the action to the United States District Court for the Western District of Kentucky. Kethan and First Choice then moved to dissolve the restraining order that MHA had obtained in state court and opposed MHA's motion for a preliminary injunction. On March 4, 1999, the district court dissolved the restraining order and denied MHA's request for a preliminary injunction. In late March of 1999, MHA filed this timely appeal.

### B.   Factual background

On December 27, 1991, Kethan signed an employment agreement with MedEcon, a group purchasing organization (GPO) for hospitals with its principal place of business in Kentucky. GPOs contract for the purchase of a vast array of products for use by member healthcare facilities. They also enter into agreements directly with suppliers to allow member facilities to purchase the products at reduced prices, thereby providing a substantial savings of both time and money for their members. GPOs also engage in bulk purchasing in order to provide their members even greater discounts.

From 1992 through 1996, Kethan worked as a salesman and an agreement administrator for MedEcon. Kethan's job responsibilities included meeting with various representatives from hospitals and encouraging them to use the products covered by MedEcon's agreements. He contacted numerous representatives in Texas and Oklahoma on MedEcon's behalf. During this period, Kethan had the opportunity to develop strong business relationships with MedEcon's customers, including First Choice. Kethan eventually became the agreement administrator for the First Choice account.

In June of 1998, MHA, which is also a GPO, began negotiations with MedEcon for the acquisition of MedEcon's assets. On September 9, 1998, most of MedEcon's assets were purchased by MHA. Included in those assets was Kethan's employment agreement. Neither MedEcon nor MHA obtained Kethan's written consent to the assignment. Following the transaction, Kethan continued to be an at-will employee, performing the same job, receiving the same salary and benefits, and reporting to the same supervisor.

Twenty days after the sale of MedEcon's assets to MHA, Kethan gave thirty-days' notice of his resignation. Two days after Kethan tendered his resignation notice, First Choice ceased using MHA/MedEcon for group purchasing services. When the thirty days had passed from Kethan's resignation notice, he commenced employment with First Choice. Shortly thereafter, MHA brought suit seeking to enforce Kethan's noncompetition agreement with MedEcon.

The noncompetition clause provides as follows:

Employee, during the term of this agreement and for a period of two (2) years after the termination thereof, will not do, directly or indirectly, for himself or herself or as an agent of, or on behalf of, or in conjunction with, any person, trust, firm, partnership, corporation, or business organization other than the Company ("Other Firm"), nor will he or she, directly or indirectly, cause or permit any

Kethan's reliance on the statement was unreasonable in light of the contractual requirement that all modifications have to be in writing. Aside from the fact that there appears to be no consideration for Irene's alleged promise, this is exactly the type of claim that the non-modification clause was designed to prevent. Accordingly, Kethan's reliance argument is unavailing.

### E. The district court must balance the equities

Although we have concluded that the district court erred in dismissing MHA's motion for a preliminary injunction based on the legal issues regarding assignability, this leaves unresolved the factual issues that must be considered. These issues include (1) the likelihood of success on the merits, (2) the irreparable harm that could result if the injunction is not issued, (3) the impact on the public interest, and (4) the possibility of substantial harm to others. *See In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 859-60 (6th Cir. 1992). Kethan and First Choice strenuously argue that the district court did not abuse its discretion in refusing to grant the preliminary injunction because MHA cannot show any damages and, in any event, could be adequately compensated by a monetary award. These issues will need to be resolved by the district court on remand.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the decision of the district court and **REMAND** the case for further proceedings consistent with this opinion.

Kethan's and First Choice's final argument is based on this circuit's decision in *W.R. Grace & Co. v. Hargadine*, 392 F.2d 9 (6th Cir. 1968), which arguably held that noncompetition clauses are not assignable under Ohio law. In the first place, *Grace* is distinguishable from the facts of the present case because the court was interpreting Ohio law as opposed to Kentucky law. Second, the holding in *Grace* with respect to assignability is ambiguous at best. The district court's decision in *Grace* actually supports MHA's position, because it held that the new employer had the right to enforce the covenant against the employee for the specified term of two years. *Id*. at 19. But because the two-year covenant had ended in April of 1962 due to a prior corporate change, however, and because Grace did not acquire ownership until May of 1964, the district court held that the two-year ban had already lapsed. *Id*. This court affirmed the district court's decision but, in dicta, stated that noncompetition clauses were not assignable under Ohio law. *Id* at 20. Because *Grace* was interpreting Ohio law and because the basis for the court's decision is unclear, we find that the case is not determinative in resolving the present action.

Based on the opinions of the lower Kentucky courts in *Choate*, the majority rule from the other states that have addressed the issue, and the additional reasons set forth above, we believe that the Kentucky Supreme Court would conclude that noncompetition clauses are assignable. Consequently, we reverse the district court on this point.

### D. Kethan could not reasonably rely on Larry Irene's statements

Kethan and First Choice next argue that even if the noncompetition clause was properly assigned to MHA, MHA waived its contractual rights or is now estopped from asserting its contractual rights because its president Larry Irene allegedly told Kethan that MHA would not enforce the clause against him. MHA argues that Irene never made such a statement to Kethan. Even if Irene did so state, however,

Other Firm in which he or she has a proprietary or financial interest, or of which he or she is a director, officer, employee, shareholder, partner, or representative, to do any of the following[:]

a. solicit or cause any past, present or future (up to the time of the termination of employment) customers (or members) of the Company or of any of the existing or future subsidiaries or affiliates of the Company ("Subsidiaries or Affiliates") to transfer all or part of their business from the Company or the Subsidiaries or Affiliates or render competitive services to any such customers (or members).

b. induce or attempt to influence any existing or future employee of the Company or any of the Subsidiaries or Affiliates to leave such employment; and

c. engage in any of the kinds of business activities in which the Company or any of the Subsidiaries or Affiliates have been or is now engaged within the States of Texas, Kansas, Nebraska, Oklahoma, Colorado, Idaho, Arizona, Wyoming, and Missouri.

In addition to the noncompetition clause, the agreement contained a provision requiring that any modifications be in writing and signed by both parties. The agreement also provided that any disputes were to be governed by Kentucky law. No clause in the contract, however, directly addressed the issue of whether Kethan's contract could be assigned.

The district court concluded that the assignment of Kethan's contract was a modification. Because any modification had to be in writing, and there was no such writing, the district court held that Kethan was no longer bound by the noncompetition clause. The district court also held that noncompetition clauses are not assignable under Kentucky law.

## II. ANALYSIS

### A.  Standard of review

Although this court reviews a challenge to a district court's decision regarding preliminary injunctions for abuse of discretion, *see Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995), the two key issues in this case are questions of law dealing with assignments under Kentucky law.  Neither issue has been directly addressed by the Supreme Court of Kentucky.  "When the district court construes a contract, such interpretation is a question of law and reviewable de novo by the appellate court."  *F.D.I.C. v. Aetna Cas. and Sur. Co.*, 903 F.2d 1073, 1077 (6th Cir. 1990).  Our role in this diversity of citizenship case "is to make [the] best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with this question."  *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988).

### B.  An assignment does not modify the underlying terms of an employment contract

Provision fourteen of Kethan's employment agreement with MedEcon provides that "[n]o waiver, alteration, or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the parties hereto."  The first key issue thus becomes whether MedEcon's assignment of Kethan's employment agreement was a modification of the terms of his contract.

Kentucky courts have not yet addressed the issue of whether the assignment of an employment contract modifies the underlying terms of the contract.  The Second Circuit, however, has rejected the notion that an assignment modifies the underlying terms of a contract:

> The fact that the Agreement also provided that its terms could not be waived or altered without the written consent of the bank did not justify a departure from the

type of employee for whom noncompetition clauses were designed.  *See Central*, 622 S.W.2d at 685-86.

Kethan and First Choice respond by arguing that a personal services contract cannot be assigned.  A personal services contract, however, requires that one of the parties be bound to render personal services.  *See generally Kenneth D. Corwin, Ltd. v. Missouri Medical Service*, 684 S.W.2d 598, 600 (Mo. Ct. App. 1985) ("[T]he duty to perform is not assignable without the consent of both parties.").  In contrast, a noncompetition clause only requires that one of the parties abstain from certain activities.  *See generally Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990) ("Although an employee's duty to perform under an employment contract generally is not delegable, . . . the right to enforce a covenant not to compete generally is assignable in connection with the sale of a business.") (citation omitted); *In re Andrews*, 80 F.3d 906, 912 (4th Cir. 1996) ("Although the Thirteenth Amendment prohibits a court from specifically enforcing a personal service contract, an agreement not to compete is specifically enforceable if it is reasonable.").  Here, Kethan was an at-will employee who was free to resign at any time.  Consequently, the noncompetition clause does not require any affirmative action on the part of Kethan, and is thus assignable.

Kethan and First Choice further argue that the management style and "character" changed when MHA purchased the assets of MedEcon.  This, however, is irrelevant to the issue of whether the noncompetition clause is assignable because the clause was not tied to the management style or "character" of MedEcon.  In fact, MedEcon could have changed its management at any time, and Kethan would have still been bound by the noncompetition clause.  Similarly, management would have changed exactly as it did if MHA had purchased the stock of MedEcon rather than its assets and, as previously noted, Kethan would have had no basis to complain.

In addition to opinions from the lower courts of Kentucky, this court may use the rule adopted by most of the jurisdictions that have addressed the assignability issue as persuasive authority in determining how the Kentucky Supreme Court would likely decide the question. *See Kurczi*, 113 F.3d at 1429. With respect to the assignability of noncompetition clauses, "[a] majority of courts permit the successor to enforce the employee's restrictive covenant as an assignee of the original covenantee (the original employer)." 6 RICHARD A. LORD, WILLISTON ON CONTRACTS § 13:13 (4th ed. 1995).

MHA also correctly points out that if it had purchased the stock of MedEcon rather than its assets, MedEcon would have remained in existence and continued to be Kethan's employer. Because no assignment would have been necessary under such circumstances, Kethan would have had no basis to even question the enforceability of the noncompetition clause. Allowing Kethan to avoid his obligations under the circumstances of this case simply because MHA decided to structure the transaction as a purchase of assets rather than stock would exalt form over substance.

The policy behind enforcing noncompetition clauses is to protect businesses against employees resigning and taking valued clients with them. *See Central Adjustment Bureau, Inc. v. Ingram Associates*, 622 S.W.2d 681, 685-86 (Ky. Ct. App. 1981). In this case, while working for MedEcon, Kethan had access to MedEcon's customer lists. He eventually became First Choice's primary advisor. Because of that, Kethan developed a special business relationship with First Choice. Shortly after First Choice decided to end its business relationship with MHA/MedEcon, Kethan ceased working for MHA and commenced working for First Choice. The reason that Kethan was able to develop his unique business relationship with First Choice, and later go to work for it, was because MedEcon employed him and placed him in charge of the First Choice account. He is thus precisely the

general New York rule . . . that a parol assignment of a debt, claim, or chose in action is valid. An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged. Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor.

*Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 268-69 (2d Cir. 1983) (citations omitted); *accord*, *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 107 (2d Cir. 1998) (noting that it is "elementary" that assignments do not modify the underlying terms of a contract). Those cases correctly recognize that assignments and modifications are completely different concepts, and that assignability is not impacted by "boilerplate" modification provisions.

Based on the reasoning of *Citibank* and *Ametex*, we conclude that the terms of Kethan's employment were not modified by the assignment of his contract and the substitution of MHA for MedEcon. Following the assignment, Kethan's contractual rights and duties as an employee did not change. The only thing that changed was the entity now entitled to enforce the terms and conditions that Kethan had previously agreed to when he entered into his employment agreement. Accordingly, we hold that the district court erred when it concluded that the assignment of Kethan's employment contract modified the terms of his agreement.

## C.  A noncompetition clause is assignable in Kentucky

Under Kentucky law, it has long been recognized "that a contract is generally assignable, unless forbidden by public policy or the contract itself, or its provisions are such as to show that one of the parties reposes a personal confidence in the other, which he would have been unwilling to repose in

any other person." *Pulaski Stave Co. v. Miller's Creek Lumber Co.*, 128 S.W. 96, 101 (Ky. 1910) (citation omitted). Kentucky courts have also acknowledged that noncompetition clauses play a critical role in business and are favored as long as they are reasonable in geographic scope and duration. *See Central Adjustment Bureau, Inc. v. Ingram Associates*, 622 S.W.2d 681, 685-86 (Ky. Ct. App. 1981) (noting that the only protection for highly specialized businesses against employees resigning and taking their clients away are noncompetition clauses); *Lareau v. O'Nan*, 355 S.W.2d 679, 681 (Ky. 1962) ("[T]he policy of this state is to enforce [noncompetition clauses] unless very serious inequities would result."); *Borg-Warner Protective Services, Corp. v. Guardsmark, Inc.*, 946 F.Supp. 495, 501 (E.D. Ky. 1996) (distinguishing *Calhoun v. Everman*, 242 S.W.2d 100 (Ky. 1951), by noting that "the more modern cases, including those in Kentucky, place more emphasis on the employer's investment in the employee and have evolved an approach balancing the importance of that factor against the hardship to the employee and the public interest").

The second key issue in the present case, however, is not the general enforceability of a noncompetition clause, but whether such a clause is assignable under Kentucky law. There is only one case in Kentucky that addresses this issue. In *Choate v. Koorsen Protective Servs., Inc.*, 929 S.W.2d 184 (Ky. 1996), an employee was subject to a noncompetition clause that was silent as to whether it could be assigned. The assets of the company were later sold, and the seller assigned the noncompetition clause to the purchaser. Choate, the employee, argued that the clause was unenforceable because he did not expressly consent to the assignment. The Jefferson County Circuit Court rejected this argument and issued an injunction enforcing the noncompetition clause. This decision was affirmed by the Kentucky Court of Appeals.

By the time the case reached the Kentucky Supreme Court, the one-year noncompetition clause had expired by its own terms. Because the issue was then moot, the Kentucky

Supreme Court declined to address it. Consequently, the only Kentucky authority on point, as enunciated by both the trial and the appellate courts in *Choate*, recognizes that noncompetition clauses may be assigned as part of the sale of a business's assets. "Where a state appellate court has resolved an issue to which the high court has not spoken, we will normally treat [those] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently." *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997) (citation and internal quotation marks omitted). We find no such strong showing, or indeed any showing at all, in the case before us.

But Kethan and First Choice argue that *Choate* is distinguishable because the trial court did not enforce the noncompetition clause until the original employer had been joined as a plaintiff. We find this argument unpersuasive, however, because the circuit court in *Choate* found that all contractual rights to Choate's noncompetition clause were transferred from Sexton, Choate's original employer, to Koorsen, and held that "Koorsen [has] the right to enforce the covenant not to compete against Choate" without any reference to Sexton. Consequently, the fact that Sexton was joined as a party plaintiff had no effect on the circuit court's analysis or holding.

Kethan and First Choice also argue that the unpublished decisions of the Jefferson County Circuit Court and the Kentucky Court of Appeals cannot be considered because Rule 76.28(4)(c) of the Kentucky Rules of Civil Procedure provides that unpublished decisions cannot be cited as authority. This Kentucky procedural rule, however, is not controlling in the case before us. *See Miller v. Davis*, 507 F.2d 308, 313 (6th Cir. 1974) (noting that federal courts may use their own procedural rules in diversity cases). Instead, Sixth Circuit Rule 28(g) is the relevant authority, and it does not preclude this court from considering the persuasive reasoning of unpublished cases.